67 F.3d 310
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eddy WOODHOUSE, Plaintiff-Appellee,
v.
MOTEL 6 G.P., INC., Defendant-Appellant.
 No. 94-35716.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 15, 1995.
Decided Oct. 2, 1995.
 
 1
 Before: ALARCON and CANBY, Circuit Judges and FITZGERALD,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Motel 6 G.P., Inc. ("Motel 6") appeals from the district court's judgment following a jury trial awarding Eddy Woodhouse ("Woodhouse") $25,000.00 in compensatory damages and $150,000.00 in punitive damages in Woodhouse's action under 42 U.S.C. Sec. 1981 and related state statutes.[1] Woodhouse's claims were based on his contention that he was denied a room at the Yakima, Washington Motel 6 on the basis of his race. Motel 6 alleges that the district court abused its discretion by: (1) admitting a summary chart of prior guest and administrative agency complaints involving Motel 6 locations throughout the country between 1987 and 1993 because the complaints were irrelevant and unfairly prejudicial; (2) requiring Motel 6 to use a written summary in place of live testimony by individuals of African-American and Hispanic descent who had stayed at the Yakima Motel 6 without incident; and (3) precluding Motel 6 from cross-examining Woodhouse regarding his alleged failure to pay child support and cocaine dealing.
 
 
 4
 We reverse and remand for a new trial because the district court erred in admitting the summary of prior guest and administrative agency complaints, and erred in requiring Motel 6 to use a written summary in place of live testimony by percipient witnesses. The district court's limitation on cross-examination of Woodhouse, however, was a proper exercise of discretion. We discuss Woodhouse's contentions and the facts pertinent thereto under separate headings.
 
 I.
 
 5
 Motel 6 contends that the district court erred in admitting the summary of prior guest and administrative agency complaints into evidence. Specifically, Motel 6 argues the prior guest and administrative agency complaints were not relevant to Woodhouse's claim and, even if they were, such evidence was so prejudicial that it should have been excluded under Rule 403 of the Federal Rules of Evidence. We review a district court's evidentiary rulings for abuse of discretion. United States v. Blaylock, 20 F.3d 1458, 1462 (9th Cir.1994).
 
 
 6
 Prior to trial, Woodhouse filed an amended exhibit list which included, inter alia, sixteen administrative complaints filed between April 1987 and July 1993 with federal, state, and local administrative agencies by Motel 6 guests alleging they had been discriminated against because of their race; an alphabetical by state summary of the sixteen administrative complaints; forty-eight guest complaints received directly by Motel 6 between September 1988 and August 1993 by guests alleging that Motel 6 personnel had discriminated against them based upon their race; and an alphabetical by state summary of the forty-eight guest complaints. The administrative and guest complaint files also contained related correspondence and Motel 6's response, when applicable.
 
 
 7
 Motel 6 objected to the admissibility of these exhibits on various grounds, and filed a motion in limine to exclude them. The district court ruled that the prior complaint evidence was relevant and not prejudicial. The district court observed that Woodhouse was claiming that Motel 6 had received "many complaints but failed to convey to its employees that the acts complained of would not be tolerated" and that "this failure [ ] implicitly permitted ... affirmative discriminatory acts by its employees." The district court also concluded that because Woodhouse was relying on the mere "fact of the complaints and not the underlying acts of which they complain ..., the complaints [were] admissible without proof of the underlying acts." The district court reserved ruling on the admissibility of the complaints until it could conduct an in camera examination because it acknowledged that some of the complaints might not "be of sufficient reliability" to require Motel 6 to respond.
 
 
 8
 The district court also determined that the administrative and guest complaints should be presented to the jury in summary form only, and that the underlying complaints could not be introduced into evidence. The district court instructed that the summaries of administrative and guest complaints should be limited to "their date, format, and brief contents: [for example,] 'guest complained of racially derogatory comment by desk clerk[.]' " The district court excluded from the summary any Motel 6 correspondence with the complainant, or the determination of the merits of the complaint by an administrative agency.
 
 
 9
 Immediately prior to trial, the district court explained that the administrative and guest complaints were "offered to show that, true or false, founded or unfounded, there were enough claims being presented that were or should have been drawn to the attention of the people in charge of this operation." The district court emphasized, however, that it did not expect any witnesses to be called to testify about the specific incidents outlined in the summary. The court also ruled that the summaries would be limited to complaints involving Hispanic or African-American guests.
 
 
 10
 Plaintiff's Exhibits 16-19, as admitted into evidence, contained columns for the date of the "incident," the date Motel 6 was informed of the "incident," the complainant's name, a "summary of complaint," and the state, but not the specific location of the motel. The summaries included complaints made throughout the United States in more than a six-year period from April 1987 to August 1993. Only three of the complaints came from motels in the state of Washington, and only one involved the Yakima Motel 6.
 
 
 11
 At the close of evidence, the district court gave three instructions relating to the prior complaints. The jury was admonished that it was required to award damages if Woodhouse proved, by a preponderance of the evidence, that:
 
 
 12
 1. A Motel 6 employee intentionally denied Woodhouse a motel room because of Woodhouse's race, AND
 
 
 13
 2. That employee had the general authority to rent motel rooms, OR
 
 
 14
 3. That employee was acting in accordance with a Motel 6 policy of discrimination against non-whites.
 
 
 15
 If you find that 1, and either of 2 or 3, has been proved, your verdict on this claim should be for Woodhouse and against Motel 6. Otherwise, your verdict should be for Motel 6.
 
 
 16
 (emphasis added). In order to find a Motel 6 employee was acting in accordance with a Motel 6 policy of discrimination against non-whites, the court instructed the jury that it had to be persuaded that the following elements had to been proved:
 
 
 17
 First, that Motel 6 had received complaints of racial discrimination;
 
 
 18
 Second, that upon receiving those complaints a reasonable company in Motel 6's position would have informed its employees that racial discrimination in housing violated Motel 6's policy and/or the law, or taken other steps reasonably calculated to prevent racial discrimination in the rental of rooms;
 
 
 19
 Third, that upon receiving those complaints Motel 6 did not inform its employees that racial discrimination in housing violated Motel 6's policy and/or the law, or take other steps reasonably calculated to prevent racial discrimination in the rental of rooms; and
 
 
 20
 Fourth, that the Motel 6 employee who denied Woodhouse a motel room reasonably believed that Motel 6 had a policy of discrimination or indifference under which her discriminatory act would be tolerated.
 
 
 21
 Finally, the district court instructed the jury that the summary of administrative and guest complaints were admitted:
 
 
 22
 ... for the limited purpose of proving that Motel 6 had a policy of discrimination against non-whites, or by failing to respond to them created a climate in which racial discrimination would be tolerated. It is not disputed that these complaints were made and that Motel 6 received the complaints. You may consider the complaints in determining whether upon receiving those complaints a reasonable company in Motel 6's position would have informed its employees that racial discrimination in housing violated Motel 6's policy and/or the law; or taken other steps in the training, supervision, and management of its motels in regard to racial discrimination in the renting of rooms. You may also consider the complaints in determining whether the Motel 6 employee who allegedly denied Woodhouse a motel room reasonably believed that Motel 6 had a policy of discrimination against non-whites, or a climate in which racial discrimination would be tolerated.
 
 
 23
 (emphasis added). In the same instruction, the district court stated:
 
 
 24
 You may not consider the validity of these complaints.
 
 
 25
 You may not consider the outcome of these complaints.
 
 
 26
 You may not consider the complaints in determining whether the specific incident of discrimination alleged by Woodhouse in fact occurred.
 
 
 27
 In the order denying the motion for judgment as a matter of law, the district court once again addressed the admissibility of the prior complaints in summary form. The district court concluded that, for the same reasons provided in the order on motion in limine, it had not erred in admitting the prior complaints.
 
 A.
 
 28
 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Under Rule 402, "[a]ll relevant evidence is admissible except as otherwise provided[.]" Fed.R.Evid. 402.
 
 
 29
 In this case, the district court specifically instructed the jury that receipt of prior complaints of racial discrimination was relevant in determining whether a reasonable company would have taken affirmative steps to curb discrimination against non-whites. According to the district court, the prior complaints were also relevant in determining whether, by failing to take such action, Motel 6 created a policy of discrimination or an atmosphere of indifference whereby its employees believed discriminatory acts would be tolerated.
 
 
 30
 We believe that this justification for the relevance of the prior complaints is logically flawed. The mere fact that a company receives complaints of racial discrimination does not require that company to take any action unless some, or a majority, or all of the complaints are true. Motel 6 had an explicit non-discrimination policy in place on the date Woodhouse was told there was no vacancy.[2] If the prior complaints were frivolous, Motel 6 had no duty to take additional affirmative steps to curb discrimination. Thus, Motel 6's mere receipt of prior complaints had no tendency to prove any fact of consequence to the determination of Woodhouse's claim unless the complaints were valid. Because the instructions prohibited the jury from considering the validity of the prior complaints, this evidence had no probative value.
 
 
 31
 In the order denying Motel 6's motion in limine, and in its denial of the motion for judgment as a matter of law, the district court relied upon Supreme Court, Ninth Circuit, and extrajurisdictional authority to support the theory that evidence of prior complaints, regardless of their validity, are relevant to demonstrate a policy of discrimination. Woodhouse, in turn, has embraced this authority in the brief he submitted to this court. These cases, however, are inapposite because they do not reach the question whether a summary of prior complaints of discrimination, unsupported by sworn testimony from witnesses exposed to cross-examination, is admissible to prove an employer's motive or intent. Instead, each of these cases involves the admissibility of live testimony or statistical proof of actual discriminatory conduct.
 
 
 32
 In Diaz v. American Tel. & Tel., 752 F.2d 1356 (9th Cir.1985), we reversed on the ground that a Mexican-American employee was improperly denied the opportunity to discover statistical information relating the employer's hiring and promotion patterns in order to attempt to present a prima facie case of racial discrimination under Title VII. Id. at 1363-64. International Bhd. of Teamsters v. United States, 431 U.S. 324 (1977) also involved statistics showing a racial imbalance in the employer's workforce compared with the population at large. Id. at 337-40 and n. 20. The summary of guest complaints admitted by the court in this matter is not analogous to the hiring and promotion statistics at issue in Diaz and Teamsters. The statistics in those cases were based upon undisputed facts concerning the number of Caucasians and minorities hired or promoted by an employer. Here, the summary of guest complaints did not demonstrate past discrimination but, instead, set forth bare allegations thereof, without any evidence of their validity.
 
 
 33
 Woodhouse's reliance on Hunter v. Allis-Chalmers Corp., 797 F.2d 1417 (7th Cir.1986) and Brown v. Trustees of Boston Univ., 891 F.2d 337 (1st Cir.1989), cert. denied, 496 U.S. 937 (1990) is equally misplaced. In Hunter, a black employee filed an action pursuant to section 1981 and Title VII alleging that he was a victim of harassment and retaliatory discharge. Id. at 1420. On appeal, Allis-Chalmers objected to the admission of testimony of witnesses concerning acts of harassment against other black workers. Id. at 1423. The court ruled that live testimony regarding other acts of harassment against other black employees is admissible to prove the employer's motive or intent. Id. at 1424. In Brown, an assistant professor in a Title VII action alleged that she had been denied tenure on the basis of her gender. The court allowed another female candidate for tenure to testify regarding the college president's subsequent derogatory, gender-based remarks for purposes of establishing the president's intent. Brown, 891 F.2d at 349-50. In both Hunter and Brown, in contrast to this case, the court admitted evidence of acts of harassment or discrimination through the testimony of percipient witnesses who were subject to cross-examination. Accordingly, the jury in each case had the opportunity to evaluate the credibility of the witnesses to determine whether this testimony regarding prior alleged discriminatory or harassing conduct was true.
 
 
 34
 The balance of case law relied upon by the district court also fails to support the proposition that a summary of prior complaints is relevant. In Williams v. Owens-Illinois, Inc., 665 F.2d 918 (9th Cir.), modified and reh'g denied, 28 Fair Empl.Prac.Cas. (BNA) 1820, cert. denied, 459 U.S. 971 (1982), the question before the court was whether actual evidence of discrimination occurring outside the statute of limitations could be used to support a showing of a policy of discrimination within the limitations period. Id. at 933. The district court in this matter relied upon E.E.O.C. v. Recruit U.S.A., Inc., 939 F.2d 746 (9th Cir.1991) for the general proposition that evidence of past discriminatory acts may be relevant to establish a pattern of discrimination. The portion of the decision quoted by the district court, however, arose in the context of upholding an injunction against the destruction of job orders, job applications, rejection letters, and related discovery materials. Id. at 755-56. In Montiel v. City of Los Angeles, 2 F.3d 335 (9th Cir.1993), we simply noted that the appellant did not appeal from the order denying the admission of prior complaints against a police officer who was accused of using excessive force during plaintiff's arrest. Id. at 342 n. 6. In Nolan v. Cleland, 686 F.2d 806 (9th Cir.1982), we held that the fact that the Veterans Administration's chief medical director was the ultimate supervisor of other VA officials, who had discriminated against plaintiff in the past, did not support an inference of discrimination on the part of the current chief medical director. Id. at 812.
 
 
 35
 None of the cases cited by Woodhouse support the proposition that evidence of unsubstantiated complaints of prior acts of discrimination is relevant to prove an employer's motive or intent. The district court erred in admitting the summary of prior complaints offered by Woodhouse.
 
 B.
 
 36
 Having decided the admission of the summary of prior complaints was error, we must next determine whether it was harmless. "The harmless error standard in civil cases is whether the 'jury's verdict is more probably than not untainted by the error.' " Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 974 (9th Cir.1994) (citing Haddad v. Lockheed Cal. Corp., 720 F.2d 1454, 1459 (9th Cir.1983)).
 
 
 37
 As set forth above, the court's instructions allowed the jury to find in favor of Woodhouse if a Motel 6 employee intentionally denied Woodhouse a motel room on the basis of his race and if, in addition, the jury found that the employee had the general authority to rent rooms, or the employee was acting in accordance with a Motel 6 policy of racial discrimination. Judy Kittselman, a former desk clerk at the Yakima Motel 6, testified that Ray Self, the manager, instructed her not to rent rooms to Mexicans and to other groups that "didn't look well[.]" Kittselman also testified that she had observed Mr. Self deny a room to a Mexican, and that she had seen another desk clerk deny rooms to minorities. Charlotte Blackwell, Ray Self, and others in Motel 6 management testified that no one at the Yakima Motel 6 discriminated against guests on the basis of race. Thus, the evidence of percipient witnesses regarding Motel 6's policy regarding the renting of rooms was evenly balanced. Accordingly, the erroneous admission of the sixty-one prior guest and administrative agency complaints may well have tipped the balance in favor of Woodhouse.
 
 
 38
 We are persuaded that admission of the summary of complaints prejudiced Motel 6 because, more probably than not, the district court's erroneous evidentiary rulings tainted the verdict. From 1987 to 1993, Motel 6 received approximately 84,000 complaints from guests in over 700 motels. Of all of the complaints received during this time period, the sixty-one complaints summarized for the jury constituted only .0007% of the total number received by Motel 6. Only one of the complaints of discriminatory treatment involved the Yakima Motel 6. That complaint was made three months after March 16, 1992, the date Woodhouse was told there was no vacancy. With three exceptions, the complaints of discrimination did not even involve motels in the state of Washington. Introduction of the complaints of discrimination in a form that specified the state but not the specific location of the motel likely misled the jury into thinking that more than one complaint was made by a guest at the Yakima Motel 6.
 
 
 39
 Motel 6 was also prejudiced by the court's ruling that Motel 6 could not offer evidence to rebut the validity of the complaints. Motel 6's records reflect that, with respect to many of the complaints sent directly to management, Motel 6 investigated the incident, settled the complaint, and took remedial measures when appropriate. None of the sixteen complaints filed with administrative agencies resulted in a ruling that Motel 6 discriminated against the complainant. In fact, in three cases, the independent administrative agency investigated the complaint and made a "no probable cause" finding. In three other cases, the records show that the administrative agency closed the case because the complainant would not cooperate or was not available. The district court's refusal to allow Motel 6 to demonstrate that these complaints were not substantiated created unfair prejudice because the court instructions permitted the jury to infer that Motel 6 took no remedial action.
 
 
 40
 We hold that it is more probable than not that the misleading nature of the summary of complaints offered by Woodhouse, coupled with the district court's refusal to allow Motel 6 to offer evidence regarding the validity of the complaints, was the deciding factor in the jury's finding that Motel 6 has a policy that tolerated discrimination against non-whites.[3]
 
 II.
 
 41
 Motel 6 next asserts that the district court erred in refusing to allow it to present the testimony of African-American and Hispanic individuals who had stayed at the Yakima Motel 6 without incident at or about the same time as Woodhouse, and restricting Motel 6 to presentation of this testimony in a written summary chart. Motel 6 contends that the testimony of minority guests who stayed at the Yakima Motel 6 without incident "would have provided direct evidence that personnel at the Yakima Motel 6 did not discriminate against minority guests ... [and] would have rebutted the inference raised by Woodhouse's use of the summary chart of nationwide guest complaints of discrimination that a pattern or practice of discrimination existed at Motel 6, and in turn, the Yakima Motel 6." Appellant's Br. at 27.
 
 
 42
 In its list of witnesses filed December 14, 1993, Motel 6 proposed calling certain minority witnesses to testify they had stayed at the Yakima Motel 6 without incident at or about the time Woodhouse sought a room. The pretrial order authorized Motel 6 to call each of these witnesses. In a list of proposed witnesses filed April 26, 1994, however, Motel 6 indicated that only three of the minority witnesses who had actually stayed at the Yakima Motel 6 on March 14 or 15, 1992 had been subpoenaed for trial.
 
 
 43
 Before trial began, however, the district court ruled that Motel 6's witnesses would not be allowed to testify at trial. Instead, the district court limited Motel 6 to the introduction of a written summary listing only the date of stay, name, and race of fourteen Yakima Motel 6 guests who were, or were believed to be, minority group members. At the close of evidence, the court instructed the jury that it could not consider this exhibit "in determining whether the specific incident of discrimination alleged by Woodhouse in fact occurred" but only "whether the Motel 6 employee who allegedly denied Woodhouse a motel room reasonably believed that Motel 6 had a policy of discrimination against non-whites, or a climate in which racial discrimination would be tolerated." In denying Motel 6's motion for judgment as a matter of law, the district court reaffirmed, without citing any applicable provision of the Federal Rules of Evidence, that summarization of some information concerning Motel 6's minority guests "served the purposes of party fairness, economy, and minimization of jury confusion."
 
 
 44
 A district court abuses its discretion if it misapprehends the underlying substantive law. Hunt v. National Broadcasting Co., Inc., 872 F.2d 289, 292 (9th Cir.1989). The district court apparently relied upon Rule 1006 of the Federal Rules of Evidence as authority for directing Motel 6 to present its percipient witness testimony in summary form. On appeal, Motel 6 correctly indicates that Rule 1006 does not authorize the presentation of a witness's recitation of facts in a written summary, in lieu of his or her sworn testimony. United States v. Baker, 10 F.3d 1374, 1411 (9th Cir.1993) (citing United States v. Winn, 948 F.2d 145, 158 n. 32 (5th Cir.1991), cert. denied, 503 U.S. 976 (1992)) (Rule 1006 does not authorize summarization of relevant testimony ). Instead, Rule 1006 authorizes only the admission of a summary of writings, recordings, and photographs. Fed.R.Ev. 1006.
 
 
 45
 The inapplicability of Rule 1006, however, does not, by itself, require us to hold that the district court abused its discretion in requiring Motel 6 to present a summary of its witnesses's testimony. Rule 611(a) allows a trial court to "exercise reasonable control over the mode ... of ... presenting evidence so as to (1) make the ... presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time[.]" Fed.R.Evid. 611(a). Similarly, Rule 403 authorizes the district court to exclude relevant evidence to prevent "misleading the jury, ... undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.
 
 
 46
 In this case, the district court announced that it was precluding Motel 6 from calling as witnesses minority guests to provide testimony about their favorable impression regarding their stay at the Yakima Motel 6 out of concerns for economy and minimization of jury confusion. The district court apparently concluded that the testimony of minority guests would be duplicative of testimony by Charlotte Blackwell, Ray Self, and others in the Motel 6 management who denied that Motel 6 employees discriminated against non-whites.
 
 
 47
 The testimony of guests who were members of a minority group would not have been cumulative of the testimony of Motel 6 employees. It was important for Motel 6 to demonstrate through the testimony of the minority guests that the employees of the Yakima Motel 6 did not discriminate. The testimony of minority guests that they experienced no discrimination would have been more credible than the employees of Motel 6 concerned about continued employment. Exclusion of the live testimony of Motel 6's minority guests was an abuse of discretion. This erroneous ruling was prejudicial because it more probably than not had an impact on the jury's deliberations. In reaching this conclusion, we are mindful that the jury awarded $150,000 in punitive damages.
 
 III.
 
 48
 Motel 6 finally contends that the district court abused its discretion by precluding Motel 6 from cross-examining Woodhouse regarding his alleged failure to pay child support and an alleged instance of crack cocaine dealing. Motel 6 apparently requested permission to question Woodhouse regarding these specific instances of conduct in order to rebut the impact of certain statements made by Woodhouse on direct examination.
 
 
 49
 Woodhouse testified on direct examination that he brought his girlfriend and their son to the Motel 6 in part because he "thought it was my responsibility to make sure they had a place to stay" and that he "was trying to get my family into a room." Woodhouse further testified that when he was denied a room he "felt lesser of a man. You know, that I couldn't do what a father should be able to do for their family at that time ..." Motel 6 reasons these statements created a positive inference that Woodhouse was a devoted father. Motel 6 maintains that it should have been permitted to question Woodhouse regarding his failure to pay child support to rebut this inference. Similarly, Motel 6 asserts that it should have been permitted to cross-examine Woodhouse regarding his cocaine dealing to rebut the inference that Woodhouse led a stable and calm lifestyle once Woodhouse testified that he left Seattle for Yakima in part because he thought "it would be in my best interest to get out of the big city because sometimes it's too much of a fast life[.]"
 
 
 50
 The district court denied Motel 6's request to cross-examine Woodhouse about his failure to pay child support and his alleged drug dealing on the ground that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The court denied Motel 6's request to question Woodhouse regarding his failure to pay child support:
 
 
 51
 ... I don't think his nonsupport is an issue in this case. So I'm concerned that it would expand the issues into all kinds of things that would be properly better heard up in Superior Court on Friday afternoon and that again any probative value of that kind of testimony--remote as it is on the issues--the issues in this case--is prejudice, and would outweigh its probative value.
 
 
 52
 (emphasis added). The district court also rejected Motel 6's request to cross-examine Woodhouse regarding prior involvement with selling cocaine:
 
 
 53
 Again, the Court doesn't feel that--that it should permit that kind of enlargement. That's an effort, it seems to the Court, to get back into the sort of things we dealt with early on in this case when they were offered then as a possible basis of at least one that might have been considered as a basis for rejection of his tenancy. But on either issue, it seems to the Court, first of all, certainly they're not opened up by his testimony, which he was invited to give to us as to why he came to Yakima back in '89. That's when he indicated he wanted to get over here, among other reasons, the change of pace; and the Court doesn't feel that that's an opening up of his possible prior incidents of misconduct, such as dealing in cocaine.... It would be highly prejudicial and far outweigh any probative values that might relate to his stress.
 
 
 54
 (emphasis added).
 
 
 55
 We conclude that the district court did not err in limiting the scope of cross-examination. Fed.R.Evid. 611(b) provides, in pertinent part, that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Matters otherwise appropriate for cross-examination, however, are subject to the overriding discretion of the trial judge to exclude evidence under Fed.R.Evid. 403. Because of the societal stigmas inherent to allegations of drug dealing and non-payment of child support, it was a reasonable exercise of discretion for the trial judge to conclude that the prejudicial impact of this questioning outweighed any remote probative value asserted by Motel 6. See United States v. Spencer, 1 F.3d 742, 744 (9th Cir.1992) (court of appeals will give district court "wide latitude" when it balances the prejudicial effect of proffered evidence against its probative value).
 
 IV.
 
 56
 For the reasons stated above, we REVERSE and REMAND for a new trial. Because we reverse, we DENY Woodhouse's request for attorney's fees pursuant to 42 U.S.C. Sec. 1988.
 
 
 
 *
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 42 U.S.C. Sec. 1981 provides, in pertinent part, that:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens[.]
 42 U.S.C. Sec. 1981 (1992). Chapter 19.86 of the Revised Code of Washington prohibits unfair business practices. Wash.Rev.Code Ann. Sec. 19.86.010 et seq. (West 1989). Chapter 49.60 of the Revised Code of Washington prohibits, inter alia, discrimination in accommodations based upon race. Wash.Rev.Code Ann. Sec. 49.60.010 et seq. (West 1990).
 
 
 [2]
 The employment procedure in effect during the period Woodhouse alleges he was discriminated against provides, inter alia, as follows:
 This Guide lists categories protected by law against discrimination for employment and room accommodation.... All individuals must be treated equally, regardless of their skin color, with respect to employment and room accommodation.... All individuals must be treated equally regardless of their race, with respect to employment and room accommodation.... It is not permissible for the Company to refuse to accommodate a guest without a good business reason.
 
 
 [3]
 Because we conclude that the complaints were not relevant, we need not reach Woodhouse's contention that Motel 6 failed to make an offer of proof as to other information which should have been included in the guest summary. We also reject Woodhouse's contention that Motel 6 invited the error. Motel 6 attempted to exclude the prior complaints in their entirety prior to trial. It was only after the district court ruled that the prior complaints would be admitted in summary form that Motel 6 adopted a fall-back position and objected to the use of the complaints without also submitting to the jury the documents showing the action taken by the administrative agencies and Motel 6's response the the alleged discrimination. Accordingly, Motel 6 responded to the district court's ruling and did not in any sense lead the court into error
 Similarly, our decision to reverse on grounds of relevance makes it unnecessary for us to consider Motel 6's contentions that the prior complaints violated Rule 403, or that the district court abused its discretion by admitting the prior complaints in summary form under Fed.R.Ev. 1006 because: (1) the underlying documents were not voluminous; (2) the summary was not admissible without admission of the underlying documents; and (3) the summary descriptions of certain incidents were not complete.