Janet JACKSON and Delois
Evans, Plaintiffs,

v.

MOTEL 6 MULTIPURPOSES, INC., Mo-
tel 6, G.P., Inc., Motel 6 Operating L.P.,
IBL Limited, Inc., d/b/a Motel 6, and
Accor S.A., Defendants.

Mario PETACCIA, et al., Plaintiffs,

v.

MOTEL 6, G.P., INC., and Motel
6 Operating L.P., d/b/a Motel
6, Defendants.

Nos. 96–72–CIV–FTM–17D,
96–115–CIV–FTM–17D.

United States District Court,
M.D. Florida,
Fort Myers Division.

Aug. 15, 1997.

Michael J. Pucillo, Burt & Pucillo, West Palm Beach, FL, Steven J. Routh, Craig A. Hoover, Audrey J. Anderson, Hogan & Hartson, Washington, DC, Michael C. Addison, Law Office of Michael C. Addison, Tampa, FL, C. Oliver Burt, III, Burt & Pucillo, West Palm Beach, FL, Theodore J. Leopold, Edward M. Ricci, Ricci, Hubbard & Leopold, P.A., West Palm Beach, FL, Joseph M. Sellers, Avis Buchanan, Washington Lawyers Committee for Civil Rights & Urban affairs, Washington, DC, for Janet Jackson and Delois Evans.

Neil Harvey Chonin, Chonin, Sher & Navarrete, P.A., Coral Gables, FL, Peter Kent Spriggs, John Clark Davis, Spriggs & Johnson, Tallahassee, FL, for Mario Petaccia, Brenda Hatcher, Tanya Charles, Chervon Screen and Jennifer Bethel.

Neil Harvey Chonin, Chonin, Sher & Navarrete, P.A., Coral Gables, FL, Steven J. Routh, Craig A. Hoover, Audrey J. Anderson, Hogan & Hartson, Washington, DC, Michael C. Addison, Law Office of Michael C. Addison, Tampa, FL, Peter Kent Spriggs, John Clark Davis, Spriggs & Johnson, Tallahassee, FL, C. Oliver Burt, III, Burt & Pucillo, West Palm Beach, FL, Theodore J. Leopold, Edward M. Ricci, Ricci, Hubbard & Leopold, P.A., West Palm Beach, FL, Joseph M. Sellers, Avis Buchanan, Washington Lawyers Committee for Civil Rights and Urban Affairs, for James Sterns, Pitrell Lambert-Brown, Karl Baldwin and Marcian Killsnight.

Charles Alvin Wachter, John William Robinson, IV, Edward Martin Waller, Jr., Katherine C. Lake, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, Carl J. Coleman, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Ft. Myers, FL, Gregory M. Palmer, Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Lane, P.A., Ft. Lauderdale, FL, William O. Bittman, Michael F. Marino, John R. Erickson, Reed, Smith, Shaw, & McClay, Washington, DC, for Motel 6 Multipurpose, Inc., Motel 6, G.P., Inc., Motel 6 Operating L.P., IBL Limited, Inc. and Accor S.A.

Charles Alvin Wachter, John William Robinson, IV, Edward Martin Waller, Jr., Katherine C. Lake, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, Carl J. Coleman, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Ft. Myers, FL, Dennis M. O'Hara, Robert E. Paradela, Wicker, Smith, Tutan, O'Hara, McCoy, Graham &

Lane, P.A., Ft. Lauderdale, FL, William O. Bittman, Michael F. Marino, John R. Erickson, Reed, Smith, Shaw, & McClay, Washington, DC, for Motel 6, G.P., Inc. and Motel 6 Operating L.P.

## *ORDER GRANTING JACKSON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND REFERRING PETACCIA PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*

KOVACHEVICH, Chief Judge.

This consolidated cause comes before the Court on the following documents:

*Jackson* case

(1) *Jackson* Plaintiffs' Motion for Class Certification (Docket No. 14) (filed April 19, 1996), Memorandum of Law in Support (Docket No. 15) (same filing date), and Notice of Filing of Declarations in Support (Docket No. 217) (filed July 25, 1997);

(2) Defendants' Response thereto (Docket No. 133) (filed February 18, 1997);

(3) *Jackson* Plaintiffs' Motion (with exhibits) to Defer Certification decision (Docket No. 143) (filed March 4, 1997);

(4) Defendants' Response thereto (Docket No. 152);

(5) Defendant's Motion to Strike the motion to defer (Docket No. 152);

(6) *Jackson* Plaintiffs' Response to the motion to strike the motion to defer (Docket No. 159);

*Petaccia* case

(7) *Petaccia* Plaintiffs' Motion for Class Certification (Docket No. 96) (filed November 18, 1996);

(8) Defendants' Response thereto (Docket No. 134, duplicate at Docket No. 135) (filed February 18 & 19, 1997);

(9) *Petaccia* Plaintiffs' Motion (with exhibits) to Defer Certification decision (Docket No. 156) (filed March 21, 1997), and factual supplement with exhibits (Docket No. 161); and

(10) Defendant's Response thereto (Docket No. 176).

---

1. Although there are many defendants in this case, the Court will refer to Motel 6 in the

*JACKSON* CASE

### I.   *Alleged Facts*

In their amended complaint (filed August 16, 1996) brought pursuant to 42 U.S.C. § 1981 (Count I) and 42 U.S.C. § 2000a, the *Jackson* plaintiffs, as lodging patrons and would-be patrons, allege that Motel 6[1] unlawfully discriminated against them on the basis of their race. They contend that this discrimination occurred not only at five (5) separate motels but also nationwide, manifesting itself in a variety of ways, such as: (1) refusing to rent otherwise vacant rooms to African–American and other non-white persons, (2) segregating African–American and other non-white patrons from white patrons within a single facility, and (3) providing substandard housekeeping and other services to African–American and other non-white patrons as compared to white patrons.

Five (5) named plaintiffs seek injunctive and monetary relief on behalf of themselves and other similarly situated persons. The first two (2) plaintiffs are Janet Jackson and Delois Evans, African–American law enforcement officers on an (unrelated) undercover assignment in Punta Gorda, Florida. (Amended Complaint at ¶¶ 6, 7, & 23). Jackson and Evans sought to rent a room at the local Motel 6, but were told by the motel supervisor that no rooms were available. (¶ 24). Shortly thereafter, a white law enforcement officer immediately obtained a room. (¶ 25).

Plaintiff James Sterns, an African–American businessman, sought to rent a room at a Motel 6 in Duncanville, Texas. (¶¶ 8 & 26). Sterns, sans a wallet, was told that there were no rooms available at the Duncanville Motel 6 and that he should try the Motel 6 in South Dallas, Texas, which Sterns alleges is a predominantly African–American location. (¶ 28). Waiting for his fiancé outside the Duncanville Motel 6, Sterns observed at least one (1) white person obtain a room. (¶ 29). Shortly thereafter, Sterns' fiancé—a white

singular for narrative purposes.

female—arrived, entered the lobby, and was offered a room.[2] (*Id.*).

The fourth named plaintiff is Karl Baldwin, an African–American alleged to have experienced discrimination at two (2) motels in Tallahassee, Florida. (¶¶ 9, 30, & 33). With regard to the Motel 6 on Apalachee Parkway, he was told on two (2) occasions that no rooms were available. (¶ 30). Yet, Baldwin contends to have noticed a near-empty parking lot and vacant rooms on both occasions and subsequently to have observed white persons obtain rooms on at least one (1) occasion. (¶¶ 30 & 31). On one of those occasions, he called the front desk from a remote phone and was told that rooms were, in fact, available. (¶ 30). On another occasion at the Apalachee Parkway Motel 6, Baldwin obtained a room but was denied his request for a room facing the pool, many of which appeared to be vacant. (¶ 32). Instead, he was assigned to the back of the motel, allegedly referred to as the "ghetto" section. (*Id.*). With regard to the Motel 6 on Monroe Street, Baldwin claims to have been denied a room when there appeared to be many vacancies. (¶ 33).

The last named plaintiff, Marcian Killsnight, is a Native American. (¶ 10). Killsnight and family stopped at a Motel 6 in Sioux Falls, South Dakota, which had a vacancy sign illuminated. (¶ 34). Killsnight's white father-in-law sought one (1) room and was told by a Motel 6 employee that three (3) rooms were available. (¶ 35). When Killsnight sought to obtain one (1) room, however, the employee allegedly turned off the motel's vacancy sign and told Killsnight that no rooms were available. (¶ 36). Killsnight was told to leave despite protests from his father-in-law. (*Id.*).

## II. The Standard for Class Action Certification

■ Parties seeking to maintain a class action must satisfy five (5) standards for certification. The four (4) prerequisite standards are: "(1) the class is so numerous that joinder of all members is impracticable, (2)

there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

The fifth standard that must be met is set forth in either Rule 23(b)(1), (2), or (3). The only serious argument advanced by the *Jackson* plaintiffs relates to Rule 23(b)(3), which is satisfied if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

■ In deciding a motion for class certification, the Court must accept the plaintiffs' well-pled facts as true. *In re Carbon Dioxide Antitrust Litigation,* 149 F.R.D. 229, 232 (M.D.Fla.1993) (Fawsett, J.). The Court may not inquire into the merits of the suit. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). Although the plaintiffs carry a "strict" burden of persuasion, *Sandlin v. Shapiro & Fishman,* 168 F.R.D. 662 (M.D.Fla.1996), premised on "detailed allegations of fact showing the existence of the several prerequisites to a class action," Local R. M.D. Fla. 4.04(a), "[t]he Court resolves any doubt in favor of class certification." *Carbon Dioxide,* 149 F.R.D. at 232; *accord Jones v. Diamond,* 519 F.2d 1090, 1098 (5th Cir.1975) (stating that district courts should "err in favor and not against maintenance of the class action" at the early stage of the litigation because the decision "is always subject to modification") (internal quotations and citations omitted).

## III. Discussion

The *Jackson* plaintiffs seek to certify a class of "all African–American and other [non-white] citizens who have sought [or, for purposes of injunctive relief only, will seek]

---

**2.** The amended complaint does not state whether Sterns' fiancé entered the lobby alone or with Sterns.

to obtain public accommodations at Motel 6 motels and who were denied [or, for purposes of injunctive relief only, would be denied] such accommodations because of their race[.]" (Motion for Class Certification, Docket No. 14).

The parties' certification arguments are founded on two (2) diametrically opposed positions. The *Jackson* plaintiffs contend that class action certification is appropriate in light of their allegations that Motel 6 has a nationwide policy of discrimination on the basis of race. Motel 6 stresses that nationwide class action is not appropriate given the small handful of geographic locations involved with the named plaintiffs. For the reasons expressed below, the Court concludes that the *Jackson* plaintiffs have met their burden and that certification of a nationwide class is justified by the amended complaint and record evidence.

### A. Rule 23(a)(1): Numerousity

The Court finds that the class is so numerous that joinder of all members is impracticable. There are 757 Motel 6 locations throughout the United States. A vice president of Motel 6 attests that it "welcomes" approximately 33,000,000 million patrons per year. *Exhibit B to Defendants' Response (Docket No. 133).* However, both parties agree that there is no available figure for the number of persons "unwelcomed" (for whatever reason) by Motel 6 per year. The *Jackson* plaintiffs estimate such a number to be in the thousands. (Amended Complaint at ¶ 43). The Court finds this estimate to be a reasonable one in light of counsel's statement (Docket No. 217, p. 1) that, as of July 22, 1997, over 550 people have responded to the notices published by the *Jackson* plaintiffs, as approved by this Court's order granting in part, denying in part, the plaintiffs' motion for leave to conduct class communications (Docket No. 139, dated February 21, 1997) (the "communication order"). Joinder would be impracticable given this estimate and the very real notion that many of the alleged

victims will never be located, let alone identified prior to trial.

### B. Rule 23(a)(2): Commonality

■ The Court finds that there are questions of law or fact common to the class. Many of the questions of law and fact involved in this case are recited in jury instructions used in the factually similar case of *Woodhouse v. Motel 6 G.P., Inc.,* 1995 WL 579642 (9th Cir.1995). With regard to a section 1981 claim that was based on facts substantially similar to the facts of the instant case, the district court gave the following jury instructions (as · relevant herein):

[Plaintiff is entitled to damages if he proved, by a preponderance of the evidence, that:]

1. A Motel 6 employee intentionally denied [Plaintiff] a motel room because of [Plaintiff's] race, AND

2. That employee had the general authority to rent motel rooms, OR

3. That employee was acting in accordance with a Motel 6 policy of discrimination against non-whites.

If you find that 1, and either 2 or 3, has been proved, your verdict on this claim should be for [Plaintiff]. Otherwise, your verdict should be for Motel 6.

*Woodhouse,* 1995 WL at 579642, \*\*3 (9th Cir.1995).[3] In the present case, element number one (1) is reflected in the proposed definition of the class. Assuming that the named plaintiffs succeed at trial, persons claiming to be members of the class would have to establish in some fashion that they were denied a room at Motel 6 because of their race.[4] Obviously, then, this element requires person-by-person inquiry.

However, element number three (3), if proven by the named plaintiffs, would answer a virtually identical question of fact as to every member of the proposed class: whether Motel 6 has/had a nationwide policy of discrimination against African–Americans

---

3. The validity of this portion of the jury instructions was not at issue in *Woodhouse.* Rather, the parties contested the relevance of summaries of prior complaints, which concerned jury instructions omitted herein. *Id.* at \*\*4.

4. Motel 6 fails to convince the Court that the proposed definition of the class is defective because it is premised on a finding of discrimination.

and other non-whites (such as Native Americans). Equally as common are the attendant legal issues, i.e., whether such a policy denies/denied class members their right to make and enforce contracts the same as a white person, 42 U.S.C. § 1981, and whether such a policy deprives/deprived class members equal access to, advantages of, and privileges associated with, public accommodations, 42 U.S.C. § 2000a. It is clear that the resolution of these issues in one (1) forum would be much more efficient, cost-effective, and uniform than litigating them forum-by-forum.

■ Contrary to Motel 6's unsupported position, the existence of factual and legal questions unique to each class member does not minimize the significance of these overwhelming and predominate commonalities. "Rule 23 does not require that *all* the questions of law and fact raised by the dispute be common. The claims actually litigated in the suit must simply be those fairly represented by the named plaintiffs." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir.) (internal citations omitted and emphasis added), *cert. denied*, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). The Court will address Motel 6's fear of "mini-trials" in its discussion of Rule 23(b)(3).

■ Motel 6 persists in arguing that the factual allegations in the amended complaint, taken as true, fail to support a nationwide pattern, practice, or policy of racial discrimination by Motel 6 against its customers. The Court disagrees. The alleged experiences of the five (5) named plaintiffs in Florida, Texas, and South Dakota easily support an inference that disparate treatment on the basis of race was not isolated to the extent that constructive notice could not be attributed to the powers-that-be at Motel 6. It is worth noting that Motel 6 did not contest the sufficiency of these allegations in its motion to dismiss. (Order on Defendant's Motion to Dismiss, Docket No. 34, 5).

The declarations and affidavits of potential class members (Docket No. 217) also lend factual support to the plaintiffs' position that racial discrimination at Motel 6 was nationwide. At least seven (7) former and current Motel 6 employees attest to have witnessed the effects of such a policy or been instructed to implement such a policy by motel managers and other types of supervisors. (Declarations # s 1–7). In fact, one of these declarants is a former manager. (# 1). At least nine (9) African–American persons attest to facts which, taken as true, would support a finding that they were denied an otherwise vacant room on the basis of their race. (# s 8, 10, 11, 19, 20, 21, 23, 24, & 26). Six (6) other African–Americans, although permitted to rent a room, attest to being victims of other forms of disparate treatment, i.e., segregation within a single facility and arbitrary eviction. (# s 12, 13, 15–16, 17, & 22).[5]

The Motel 6 facilities implicated in these declarations and affidavits are located in the following states: Alabama, Arizona, Arkansas, California, Colorado, Florida, Georgia, Indiana, Louisiana, Michigan, Missouri, New Mexico, South Carolina, Tennessee, and Texas. Including South Dakota (by virtue of named Plaintiff Killsnight), this amounts to 16 geographically diverse and random locations out of 48 continental states serviced by Motel 6—clearly a sufficient factual basis to support a finding of commonality and, for that matter, to certify a nationwide class.

To the extent not discussed within the analysis of Rule 23(a)(2), the Court incorporates by reference relevant portions of its analysis of Rule 23(a)(3) and Rule 23(a)(4), in that the commonality, and typicality, and adequacy-of-representation requirements "tend to merge." *Amchem Products, Inc. v. Windsor*, —— U.S. ——, —— n. 20, 117 S.Ct. 2231, 2251 n. 20, 138 L.Ed.2d 689 (1997).

### C. Rule 23(a)(3): Typicality

■ The Court finds that the claims of the representative parties are typical of the claims of the class. As this Court has previ-

---

**5.** In the Court's view, declarations # s 9, 14, 18, & 25 lack probative value as relevant to the *Jackson* case. At most, these declarations support a finding of bad, as opposed to disparate, treatment. It is also worth noting that the Court's assessment of declaration # s 1–7, which the *Jackson* plaintiffs indicate will also be filed by the *Petaccia* plaintiffs in support of their motion for class certification, concerns only the *Jackson* (not the Petaccia) case.

ously stated, "[t]ypicality exists when the legal or factual positions of the class representatives are sufficiently similar to the legal or factual positions of the other class members. . . . The focus of this requirement is on the legal and factual stance of the class representative[s] as compared with that of the class members. The reasoning behind this requirement is that where all the interests are sufficiently parallel, all interests will enjoy vigorous and full presentation." *Powers v. Stuart–James Co.*, 707 F.Supp. 499, 502–03 (M.D.Fla.1989) (internal citations omitted) (Kovachevich, J.).

In the present case, the amended complaint alleges a nationwide pattern, practice, or policy of racial discrimination by Motel 6. The Court has already determined that there is an adequate factual basis for that allegation. One can easily conclude from a fair reading of the amended complaint that the five (5) named plaintiffs are "victims of the same policies." *Long v. Sapp*, 502 F.2d 34, 43 (5th Cir.1974). Further, many of the declarations of potential class members support a finding that potential class members from across the nation are also victims of the same alleged nationwide policy. As such, the fundamental legal or remedial theories are the same for all class members, the interests of the named plaintiffs and the class are anything but antagonistic, and "the mere presence of factual differences will not defeat typicality." *Pottinger v. City of Miami*, 720 F.Supp. 955, 959 (S.D.Fla.1989) (Adkins, J.), *remanded for limited purposes on other grounds*, 40 F.3d 1155 (11th Cir.1994).

Indeed, even the cases cited by Motel 6 lend support the instant conclusion, in that the named plaintiffs' claims "arise out of the same event, *practice*, or course of conduct" and are "based on the same legal theories." *Lumpkin v. E.I. Du Pont de Nemours & Co.*, 161 F.R.D. 480, 482 (M.D.Ga.1995) (Fitzpatrick, C.J.). For these and other reasons, the Court is confident that the *Jackson* plaintiffs will vigorously represent similarly situated African–American and other non-white patrons and would-be patrons of Motel 6.

To the extent not discussed within the analysis of Rule 23(a)(3), the Court incorporates by reference relevant portions of its analysis of Rule 23(a)(2) and Rule 23(a)(4), in that the commonality, and typicality, and adequacy-of-representation requirements "tend to merge." *Amchem Products, Inc. v. Windsor*, —— U.S. ——, —— n. 20, 117 S.Ct. 2231, 2251 n. 20, 138 L.Ed.2d 689 (1997).

### D. Rule 23(a)(4): Adequacy

The Court finds that the representative parties will fairly and adequately protect the interests of the class. This requirement is not contested by Motel 6. After a review of the record, including the law firms' and attorneys' biographies (Docket No. 15, Exhibit A & B), the Court is convinced that: (1) the named plaintiffs have interests in common with, and not antagonistic to, the interests of the class; and (2) plaintiffs' attorneys are "qualified, experienced, and generally able to conduct the proposed litigation." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (1 1th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 1221, 99 L.Ed.2d 421 (1988).

To the extent not discussed within the analysis of Rule 23(a)(4), the Court incorporates by reference relevant portions of its analysis of Rule 23(a)(2) and Rule 23(a)(3), in that the commonality, and typicality, and adequacy-of-representation requirements "tend to merge." *Amchem Products, Inc. v. Windsor*, —— U.S. ——, —— n. 20, 117 S.Ct. 2231, 2251 n. 20, 138 L.Ed.2d 689 (1997).

### E. Rule 23(b)(3): Predominance and Superiority

The Court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The *Jackson* plaintiffs' eligibility under Rule 23(b)(3) is vigorously contested by Motel 6. Motel 6 contends that each class member's claim will be subject to different defenses. Motel 6 also labels the proposed class as "unmanageable" and "administratively unfeasible."

In a very recent opinion concerning class actions, the Supreme Court of the United States discussed Rule 23(b)(3):

Framed for situations in which "class-action treatment is not as clearly called for" as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit "may nevertheless be convenient and desirable." To qualify for certification under Rule 23(b)(3), a class must meet two (2) requirements beyond the Rule 23(a) prerequisites: Common questions must "predominate over any questions affecting only individual members"; and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." In adding "predominance" and "superiority" to the qualification-for-certification list, the Advisory Committee sought to cover cases "in which a class action would achieve economics of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Sensitive to the competing tugs of individual autonomy for those who might prefer to go it alone or in a smaller unit, on the one hand, and systemic efficiency on the other, the Reporter for the 1966 amendments cautioned: "The new provision invites a close look at the case before it is accepted as a class action . . . ."

Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's "close look" at the predominance and superiority criteria: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C ) the desirability or undesirability of concentrating the litigation of the claims in a the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action."

*Amchem Products, Inc. v. Windsor,* —— U.S. ——, —— – ——, 117 S.Ct. 2231, 2245–46, 138 L.Ed.2d 689 (1997) (internal citations omitted). The Court also noted that "Rule 23(b)(3) added to the complex-litigation arse-nal class actions for damages designed to secure judgments binding on all class members save those who affirmatively elected not to be excluded." *Id.* at ——, 117 S.Ct. at 2245. The Court pointed out one of the core concern behind Rule 23(b)(3) is "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id.* at ——, 117 S.Ct. at 2246 (internal citations omitted).

In light of the foregoing principles, class action is the most "convenient and desirable" method of litigating the *Jackson* class members' section 1981 and section 2000a claims. First, the Court is convinced that common questions of law and fact predominate over class member-specific ones. Providing the plaintiffs with one (1) forum in which to prove their allegations that Motel 6 possesses/possessed and acts/acted under a nationwide policy of racial discrimination would resolve, as to all class members, at least one (1) dispositive factual question, that is, whether such an illegal policy exists/existed, and at least two (2) dispositive and attendant legal questions, that is, whether such a policy denies/denied class members their right to make and enforce contracts the same as a white person under 42 U.S.C. § 1981, and whether such a policy deprives/deprived class members equal access to, advantages of, and privileges associated with, public accommodations, 42 U.S.C. § 2000a. As the Court concluded *supra*, these commonalities are "overwhelming and predominate."

Class resolution of these claims are superior to other available methods. Motel 6 conveniently fails to offer any viable alternatives to class treatment, but insists that its unique defenses as to each class member should defeat certification. Taken to its logical extreme, Motel 6's argument, if adopted across the board, would effectively repeal Rule 23(b)(3). Motel 6 may very well be able to thwart any given potential class member's entitlement to a share of the damages if its defenses prevent a finding that he or she was denied a motel room because of race. However, this particular factual question would occur with or without class treatment.

In contrast, litigating the existence or non-existence of a nationwide policy of racial discrimination certainly does not call for class member-specific proof. The evidence and defenses would be identical as to all class members. The only other "available method" is forum-by-forum resolution of each and every issue in this case, which would be far less efficient, cost-effective, and uniform than class resolution. Just as the "individualized nature of each transaction" did not prevent certification in *Carbon Dioxide,* 149 F.R.D. at 234, the individualized nature of each class members' exposure to discrimination at different motels should not prevent certification in this case.

A "close look" at the factors set forth in Rule 23(b)(3) further justify certification. First, class members are unlikely to have any interest in prosecuting separate actions. Fed.R.Civ.P. 23(b)(3)(A). Motel 6 prides itself on its inexpensive rental rates. As a result, individual damages are likely to be nominal and often below the cost of filing a civil action. Few, if any, lawyers would agree to litigate separate actions, at least on a contingency basis. Additionally, proceeding *pro se* against a corporate giant like Motel 6 would, no doubt, be more trouble than it is worth. Not surprisingly, with regard to Rule 23(b)(3)(B), the Court is not aware of any related, pending litigation brought by potential class members.

Motel 6 advances a legitimate concern over the difficulties likely to be encountered in managing a nationwide class action from the Middle District of Florida. However, at this stage of the case, the Court is unwilling to allow that concern to defeat certification. Motel 6's concern about thousands of "mini-trials" mirrors that of the defendant in *Carbon Dioxide,* 149 F.R.D. at 234. Yet, Motel 6 fails to realize that "[w]hile it may be necessary to revisit class certification for the purpose of calculating damages [and determining whether persons meet the class definition], there is no reason to make that determination at this stage in the case." *Id.;* *see also Powers,* 707 F.Supp. at 503 (noting the "number of procedural devices available" to handle unmanageable class issues, such as

"subclassification, bifurcation and reconsideration of class certification").

Finally, the Middle District of Florida is as convenient a forum as any for the bulk of the class treatment. Neither party points to a better location. While it is certainly true that the Middle District of Florida has one of the highest cases-per-judge ratio in the nation, this district has managed to competently handle other major class action cases such as the one involving Publix supermarkets.

Finally, the Court finds that certifying the proposed class addresses and fulfills the policy behind Rule 23(b)(3) by recognizing "the rights of people who individually would be without effective strength to bring their opponents into court at all." *Amchem,* —— U.S. at ——, 117 S.Ct. at 2246.

### F.  Class Certification's Effect on the Communication Order

Soon after the complaints were filed, both the *Jackson* and the *Petaccia* plaintiffs moved to communicate with class members. (Docket No. 59 in 96civ72 & Docket No. 6 in 96civ115). In February, 1997, this Court granted in part and denied in part these motions. (Docket No. 139) ("the communication order").

Neither the *Jackson* plaintiffs nor Motel 6 have suggested what effect, if any, class certification would have on the communication order. However, the scope of the plaintiffs' motions implicated both potential and actual class members. (*See* Docket No. 59, p. 1). Furthermore, Local R. 4.04(e), the legal basis for communication restrictions, seeks to protect "any potential or actual class member." Therefore, without any serious argument at this time to the contrary, the communication order shall remain in full force and effect as to all parties, including the *Jackson* plaintiffs, except as noted below.

At this time, the communication order only needs to be amended as to the information contained within the ordered protocol, found on pages 8, 9, & 12. It should now (substantially) read:

*BY ORDER OF THE DISTRICT COURT, I REMIND YOU THAT THE*

*PLAINTIFFS' ALLEGATIONS OF RA-CIAL DISCRIMINATION BY MOTEL 6 ARE, TO DATE, JUST THAT—ALLE-GATIONS. THEY HAVE NOT BEEN PROVEN TRUE IN A COURT OF LAW.*

*THE COURT HAS APPROVED THE JACKSON CASE TO PROCEED AS A CLASS ACTION, HOWEVER, TO DATE, THE COURT HAS NOT APPROVED THE PETACCIA CASE TO BE A CLASS ACTION,*

The parties are **ORDERED** to recognize this amendment and act accordingly as relevant.

### *PETACCIA* CASE

Unlike the *Jackson* plaintiffs, the *Petaccia* plaintiffs have not advanced any record evidence (i.e. declarations) to support their entitlement to class treatment. Apparently, declarations # s 1–7 submitted by the *Jackson* plaintiffs are going to be filed by the *Petaccia* plaintiffs. (*See* Docket No. 217, n. 1). However, to date, the *Petaccia* plaintiffs have not made this or other significant filings. Perhaps this is because Motel 6 has objected to their discovery request for the names and addresses of current and former non-managerial and non-supervisory employees. By separate order, the Court has ordered Motel 6 to produce this and other discovery forthwith.

In any event, the Court is unwilling to certify a nationwide class action in the *Petaccia* case based on the pleadings, motion(s), response(s), and these seven (7) declarations (even if they were filed by the *Petaccia* plaintiffs). Unlike the *Jackson* case, the *Petaccia* case is not one that clearly calls for class treatment at a relatively early stage of the litigation.

With more discovery, the *Petaccia* plaintiffs may very well be able to establish their entitlement to class certification. However, an evidentiary hearing may be warranted. The Court **REFERS** the motions, responses, and exhibits related to class certification (Docket Nos. 96, 134, 135, 156, 161, & 176) to the assigned U.S. Magistrate for whatever proceedings he deems appropriate and the issuance of a report and recommendation, which should be filed no later than January 5, 1998. Accordingly, it is

**ORDERED** that

(1) the *Jackson* Plaintiffs' motion for class certification (Docket No. 14) be **GRANTED;**

(2) a class of African–American and other non-white citizens who sought (or, for purposes of injunctive relief only, will seek) to obtain public accommodations at Motel 6 motels and who were denied (or, for purposes of injunctive relief only, would be denied) such accommodations because of their race is hereby **CERTIFIED;** the *Jackson* Plaintiffs shall **FILE**, within twenty (20) days from the date of this Order, a proposed means of providing, and defraying the cost of, the notice required by Rule 23(c)(2), Fed.R.Civ.P.

(3) the *Jackson* Plaintiffs' motion to defer certification decision (Docket No. 143) be **DENIED** as moot;—

(4) the Defendants' motion to strike the motion to defer certification decision (Docket No. 152) be **DENIED;**

(5) the *Petaccia* Plaintiffs' motion for class certification (Docket No. 96) be **RE-FERRED** to the assigned U.S. Magistrate Judge; and

(6) the *Petaccia* Plaintiffs' motion to defer the certification decision (Docket No. 156) be **REFERRED** to the assigned U.S. Magistrate Judge.

**DONE AND ORDERED.**