**Belinda PETERSON, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**H & R BLOCK TAX SERVICES, INC., a Missouri corporation and John Does 1–10, Defendants.**

No. 96 C 6647.

United States District Court, N.D. Illinois, Eastern Division.

July 10, 1997.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Richard Joseph Doherty, Edelman & Combs, Chicago, IL, for Belinda Peterson.

Theodore John Low, Altheimer & Gray, Chicago, IL, David H. Latham, Chicago, IL, H & R Block Tax Services, Inc.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This case centers on allegations that H & R Block defrauded its customers by inducing them to pay for tax-related services that Block knew they could not receive. In conjunction with its tax preparation business, Block offers something called a "Refund Anticipation Loan" (RAL), which provides the customer a relatively quick tax refund via a bank loan. Advertised as "Rapid Refund" the service was enticing to customers certain of an IRS IOU. But what Block allegedly failed to disclose to its customers is that individuals claiming an Earned Income Tax Credit (EITC) were ineligible for RAL. To crack down on EITC-associated fraud, the IRS held up returns claiming EITCs for weeks. Block allegedly knew that this would happen, but charged customers claiming EITCs for the RAL service anyway, scoring

a profit while its customers waited in vain for their "Rapid Refunds."

This opinion addresses not the merits of these allegations, but rather whether they support litigating this case as a class action.[1] Peterson has filed a motion for class certification under Rule 23 of the Federal Rules of Civil Procedure,[2] proposing a class comprised of all Illinois residents who paid for Block's RAL services, claimed an EITC on their federal income tax returns for the 1994 tax year or later, and were presented with a document (the RAL "Fact Sheet") explaining the RAL service and Block's obligations. For the reasons that follow, Peterson's motion is granted.[3] The class is certified as defined in the complaint.

## LEGAL STANDARDS

Peterson bears the burden of establishing that certification is appropriate under Fed. R.Civ.P. 23, and we accept her well-pled allegations in support of the motion as true. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993), *Hardin v. Harshbarger,* 814 F.Supp. 703, 706 (N.D.Ill.1993). Rule 23 prescribes a two-step analysis. First, the plaintiff must meet all four requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) questions of law or fact must be common to the class ("commonality"); (3) the claims or defenses of the representatives must be typical of the claims or defenses of the class ("typicality"), and (4) the representatives must be able to fairly and adequately protect the interests of the class ("adequacy of representation"). Failure to meet any one of these elements precludes certification. *Retired Chicago Police,* 7 F.3d at 596. Second, the plaintiff must satisfy one of three condi-

tions set out in Rule 23(b) *Amchem Prods., Inc. v. Windsor,* —— U.S. ——, ——, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). Peterson seeks certification under Rule 23(b)(3), which requires that questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action be superior to other available methods of fair and efficient adjudication. *Id.* Block opposes Peterson's motion for class certification, arguing that, except for numerosity, Peterson fails all of Rule 23's requirements.

## ANALYSIS

### I. Numerosity

The parties do not contest numerosity, and independent review shows that Peterson easily meets this requirement. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." If the exact size of the class is unknown, "[t]he court is entitled to make common sense assumptions in order to support a finding of numerosity." *Patrykus v. Gomilla,* 121 F.R.D. 357, 360 (N.D.Ill.1988), *see In re VMS Sec. Litig.,* 136 F.R.D. 466, 473 (N.D.Ill.1991) (same). Peterson alleges that Block processed 2,325,000 RALs in 1995, and that Illinois customers accounted for about 5% of that number (approximately 115,000) Amd. Cmplt. ¶¶ 40. Although these figures are not adjusted to reflect persons claiming EITCs, common sense tells us that the class is large enough to make joinder impracticable and to satisfy numerosity. *See* 2 NEWBERG ON CLASS ACTIONS § 722.A (2d ed.1992) (when general knowledge or common sense tells court that class is large, "the court will take judicial notice of this fact and will assume joinder is impracticable.").

1. In a contemporaneously issued order, we denied in part and granted in part Block's motion to dismiss Peterson's contract and fiduciary duty claims. Following that order, these claims remain: 1) Count I for breach of contract; 2) Counts II and III under RICO; 3) Count IV under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), and 4) Count VI, a claim for restitution.

2. This action was originally filed in state court. Although Peterson's opening brief refers to state rules governing class certification, the parties' subsequent briefs, filed after the case was removed to federal court, incorporate federal standards.

3. The relevant facts were recounted in detail in the opinion addressing Block's motion to dismiss. They are repeated here only to the extent necessary to resolve the class certification question.

## II. Commonality and Predominance

Normally, the court first addresses all four Rule 23(a) requirements before moving on to discuss whether the plaintiff can satisfy 23(b). In this case, however, the parties have addressed 23(a)(2)'s command that the class share common legal or factual issues together with 23(b)(3)'s requirement that these common issues predominate over individual members' concerns. In addition, our analysis of predominance disposes of several arguments that Block raises in attempt to defeat Peterson's support for the remaining class certification requirements under 23(a). As such, we will first analyze commonality and predominance together, then discuss the rest of the 23(a) requisites, and finally address the remaining aspect of Rule 23(b)(3).

■■ Rule 23(a)(2) requires that the class members share common questions of law or fact. This element is usually satisfied when a common nucleus of operative facts unites the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992) (citing *Franklin v. City of Chicago*, 102 F.R.D. 944, 949–50 (N.D.Ill.1984)). The presence of some factual variations among class members' experiences will not defeat commonality. *Id.* at 1017 Peterson need only show that there is "at least one question of law or fact common to the class." *In re VMS Sec. Litig.*, 136 F.R.D. at 473. Should we find the commonality requirement met, we next ask, under Rule 23(b)(3), whether the common questions of fact or law predominate over issues affecting only individual members.

### A. Commonality

■ Block does not seriously contend that the class members share no common legal or factual issues. Instead, Block devotes most of its time to arguing that common issues do not predominate. We, too, decline to belabor commonality because it is easily met here. Courts have consistently found a common nucleus of operative facts when the defendants are alleged to have directed standardized conduct toward the putative class members, *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 308 (N.D.Ill.1995) (citations omitted), or where the class claims arise out of standard documents, *Haroco,*

*Inc. v. American Nat'l Bank & Trust Co.*, 121 F.R.D. 664, 669 (N.D.Ill.1988) (citations omitted) (claims arising out of standard documents present a "classic case for treatment as a class action"); *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill.1984) (finding class certification appropriate where plaintiff challenged city police department's standard method of transporting all arrestees). Here, Block's standardized conduct lies at the heart of every single claim in the complaint. Every count turns on whether Block deliberately misrepresented the availability of its RAL service by way of a standard document—the RAL Fact Sheet—and sold this service despite knowing that the class members could not receive it This conduct is common to all the class members; indeed, Peterson defines the class by this standard conduct, including within in the class all Illinois Block customers who were presented the RAL Fact Sheet and charged for the RAL service. We find that these allegations sufficiently present factual and legal issues that are common to all class members.

### B. Predominance

Block argues, however, that these common issues are dwarfed by myriad individual circumstances that characterize the class members' RAL transactions. Three factors purportedly differentiate the class members' experiences: 1) the specific advertising and marketing promotions the class members might have seen or received; 2) other information to which they might have been exposed through discussions with friends and encounters with Block's personnel; 3) the extent to which the class members may have read and understood documents disclosing the possibility that the Bank would reduce their RALs by the amount of their EITCs, i e., differences in individual reliance upon any alleged misrepresentations. According to Block, proof of individual reliance is an especially significant issue in this case because it is necessary to establish violations of both RICO and the Illinois Consumer Fraud Act (ICFA). For these reasons, Block urges us to find that individual, not

common, issues predominate. None of these points has merit.

### 1. Advertising and Oral Representations

■ First, with regard to points one and two, Block presents no evidence that any of these theoretical differences among class members actually exists *See Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 665 (N.D.Ill.1996) ("Whitehall fails to show, however, that oral representations ... were ever actually made to any resident or sponsor...."). Block identifies no specific advertising or promotional materials or oral representations to which the class members were exposed, arguing in a tentative manner only that class members "might have" seen or heard these things. Supported by nothing more than such vague assertions, Block's contention that class members' experiences varied on these fronts is pure guesswork.

■ Second, assuming that the class members were presented various ads, promotions and oral statements, none of these materials or statements forms the basis of the fraud alleged here. Rather, the claims in this case are premised on written misrepresentations contained in standard documents furnished to every class member—a situation that presents a "classic case for treatment as a class action." *Haroco, Inc.*, 121 F.R.D. at 669. Consequently, any oral representations the class members received personally "may have supplemented the written documents that [the class] received, but they do not replace those written statements as the focus of the fraud alleged." *Arenson*, 164 F.R.D. at 665. Courts will find predominance despite the existence of oral representations that vary among class members if those representations are not integral to the alleged fraud. *See Scholes v. Moore*, 150 F.R.D. 133, 136 (N.D.Ill.1993) (common issues predominated even though oral misrepresentations were made to plaintiffs because misrepresentations also appeared in standard written documents); *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D.Cal.1988) (class certification granted despite oral representations where complaint focused on disclosures and admissions in standardized letters) *Cf Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957–58 (7th Cir.1989) (affirming denial of class certification where oral representations were the determining factor in the case). Here, as Peterson's allegations are predicated on standard written documents presented by Block, we cannot characterize any individualized representations outside these documents as "integral."

Block nevertheless argues that "[t]hree federal district courts have already refused to certify classes in actions like this one challenging the RAL program offered to qualified Block customers." Def. Br. at 10. All three cases are distinguishable on the predominance issue. In *Buford v. H & R Block, Inc.*, 168 F.R.D. 340 (S.D.Ga.1996), the class claims did not challenge the accuracy of representations about RAL availability presented in standard documents, but rather attacked the financing arrangement between Block and the banks issuing RALs and alleged that Block deceived its customers into thinking that RAL was their actual tax refund, not a loan *Id.* at 345. Finding that individual issues predominated over common questions, the court distinguished cases in which "the contractual documents themselves were alleged to amount to violations of RICO," observing that "in this case, the violation cannot be found through an examination of the contracts[,] which Plaintiffs admit are not the central focus of the inquiry at hand." *Id.* at 358. The core misrepresentations lay outside the written contractual documents and varied among class members *Id.* The situation before us is just the opposite— all the alleged misrepresentations are contained in standard documents distributed to the class. Likewise, standard contractual misrepresentations were not the issue in *Brown v. H & R Block*, No. CV–93–C–749–W (N.D.Ala Apr. 25, 1994) (transcript of hearing on Motion for Certification of Class). Instead, the complain focused on various oral misrepresentations and deceptive advertising that lead customers to believe RAL was a tax refund rather than a loan. Finally, Block's citation to *Abeyta v. Beneficial Nat'l Bank*, No CIV–92–0725–JP/LFG (D.N.M Nov. 16, 1993), is unavailing because it is simply an

order denying a motion for class certification, unaccompanied by a transcript or opinion. We have no way of knowing whether the circumstances in that case are akin to those here, and decline to so speculate.

### 2. Individual Reliance

Block ties its third point primarily to the RICO and ICFA counts, contending that issues of individual reliance predominate in these claims. For example, Block contends that class members who read and understood language in Block's standard documents warning that the bank could reduce customers' RALs by the amount of their EITCs cannot claim to have relied on misrepresentations about RAL availability.[4] This reliance argument encounters several obstacles.

■ First, individual reliance is not an element of either the ICFA or a RICO claim based on mail and wire fraud,[5] the predicate RICO acts alleged here.[6] *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir.1991) (reliance is not an element of mail fraud), *Brooks v. Midas–Int'l Corp.*, 47 Ill.App.3d 266, 272, 5 Ill.Dec. 492, 496; 361 N.E.2d 815, 819 (1st Dist 1977) (reliance is not an element for claims brought under ICFA); *See Duran v. Leslie Oldsmobile, Inc.* 229 Ill.App.3d 1032, 1041, 171 Ill.Dec. 835, 842, 594 N.E.2d 1355, 1362 (2d Dist.1992) (reaffirming *Brooks'* predominance analysis under the amended ICFA). The mail fraud statute, 18 U.S.C. § 1341, focuses on the defendant's conduct in devising or intending to devise a scheme to defraud, not the individual experi-

ences of each defrauded person. *Ward v. United States*, 845 F.2d 1459, 1462 (7th Cir. 1988); *see Biesiadecki*, 933 F.2d at 544 (stating that "[t]hose who are gullible, as well as those who are skeptical, are ·entitled to the protection of the mail fraud statute"). In *Biesiadecki*, the Seventh Circuit ruled that certain class members' testimony that they did not feel they were defrauded was properly excluded because it would have "improperly shifted the jury's attention away from the knowledge and intent of [the defendant] and focused instead on the beliefs of the victims of the alleged scheme to defraud." *Id.* at 544. Accordingly, variations in individual reliance do not defeat certification because a scheme to defraud, as alleged here, violates RICO regardless of the characteristics of the scheme's intended victims. *Heastie v. Community Bank,* 125 F.R.D. 669, 674–75 (N.D.Ill.1989).

■ Second, assuming reliance were relevant in this case, it is well-established that individual issues of reliance do not thwart class actions. *Riordan v. Smith Barney*, 113 F.R.D. 60, 65 (N.D.Ill.1986); *see Ridings v. Canadian Imperial Bank*, 94 F.R.D. 147, 151 (N.D.Ill.1982) ("[T]he existence of individual questions of reliance does not necessarily bar class certification on the common questions involved."); *Issen v. GSC Enterprises, Inc.,* 522 F.Supp. 390, 403 (N.D.Ill.1981) (same).

■ Third, courts will presume class members' reliance when it is logical to do so or when the complaint's allegations make reli-

4. Differences in the extent to which class members read and understood Block's standard documents will not defeat certification on the contract claim because, under Illinois law, parties to a contract "cannot avoid their obligations under it by showing that [they] did not read what [the] signed." *Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138, 140 (7th Cir.1985) (citations omitted); *Breckenridge v. Cambridge Homes*, 246 Ill.App.3d 810, 819, 186 Ill.Dec. 425, 430, 616 N.E.2d 615, 620 (2d Dist.1993) (party who signs a contract cannot later claim that he or she did not understand it). Consequently, all class members are presumed to know about the contractual obligations in Block's standard documents whether or not they read and understood them.

5. The circuits are not in agreement on this issue. In *Pelletier v. Zweifel*, 921 F.2d 1465, 1499–1500 (11th Cir.1991), the Eleventh Circuit stated that

"when the alleged predicate act is mail or wire fraud, the plaintiff ... must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made." This proposition, however, is contrary to the Seventh Circuit's *Biesiadecki* decision, which controls this Court.

6. In order to establish a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must prove the following six factors: 1) that a person 2) through a pattern 3) of racketeering activity or collection of an unlawful debt 4) directly or indirectly a) invests in or b) maintains an interest in or c) participates in 5) an enterprise 6) the activities of which affect interstate commerce. *See Heastie v. Community Bank*, 125 F.R.D. 669, 674 (N.D.Ill. 1989) (citations omitted). Mail and wire fraud are two of the predicate acts that may constitute racketeering activity 18 U.S.C. § 1961(1).

ance apparent. In *Johnson v. Midland Career Institute, Inc.,* 1993 WL 420954 (N.D.Ill. Oct.18, 1993), class members alleged that the defendant violated RICO and ICFA by operating a fraudulent trade school scheme, inducing the class members to enroll and take out loans for tuition only to close the school a short time later. *Id.* at * 1. The court found that reliance by all class members on the defendant's misrepresentation that they would get the education they paid for was shown "by the simple fact that the class members enrolled and by their willingness to take on student loans to pay tuition." *Id.* at *6. Rance was likewise apparent in *Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665, 679 (D.Kan.1989), a RICO case in which MCI had allegedly misrepresented its commission plans to coax the class member-salespersons to work for the company. The court inferred universal reliance because "it is implausible that, in initiating or continuing their employment with MCI, the salespersons did not rely on the commission plans which they were required to sign." *Id.*

Reliance is also apparent in this case. Class members paid a significant fee ($51.50–$155.50) for the RAL service—but none of the class members was eligible for it. Instead of receiving money on an expedited basis, the class members were denied the largest portion of their refunds for several weeks because they had claimed an EITC. It is inconceivable that the class members would rationally choose to pay a fee for a service they knew was unavailable, especially given that their income was sufficiently low to qualify for an EITC. The only logical explanation for such behavior is that the class members relied on the RAL Fact Sheet's representation that they could take advantage of RAL by paying the requisite fee.

In contrast, Block's cited cases denying class certification were decided that way precisely because courts found that, in light of the allegations before them, reliance was not

apparent. For example, in *Rosenstein v. CPC Int'l, Inc.,* 1991 WL 1783, at *1, *3 (E.D.Pa.1991), the court refused to presume that class members had bought the defendant's cooking oil in reliance on allegedly fraudulent advertisements touting the product's ability to lower cholesterol levels. Both sides admitted that many of the class members had purchased the cooking oil for reasons besides cholesterol content, such as taste and brand name. *Id.* at *3. Similarly, in *Wall v. Merrill Lynch Pierce, Fenner & Smith,* 1992 WL 245540, at *1, *4 (N.D.Ill. 1992), reliance on the defendant's allegedly fraudulent partnership accounting statements was not apparent because the class members alleged that the statements were not the only factor affecting their investment decisions.[7] This case differs from *Rosenstein* because the RAL service carried only one advantage—refund money on an expedited basis. And unlike the accounting statements in *Wall,* Block's standard documents are alleged to be the sole factors in the class members' decision to purchase the RAL service.

In sum, all the class claims focus on Block's uniform conduct in allegedly deceiving class members into paying for a service they couldn't receive by way of standard documents presented to each member. Neither advertising, nor oral representations, nor issues of individual reliance destroy the predominance of this central issue. Should it later turn out that the class plaintiffs are demanding individual relief, we may revisit predominance. An order granting certification is always subject to modification if the facts adduced later do not support certification. *See General Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation"). At this point, however, the allegations establish predominance of common issues.

---

7. The remaining cases Block cites are inapposite: in two of the decisions, the alleged fraud revolved around scores of varying oral and written misrepresentations, making it impossible to presume reliance on any one, *see Eszlinger v. The Bradford Exchange, Ltd.,* 1991 WL 62301, *3

(N.D.Ill.1991); *Perta v. Comprehensive Accounting Corp.,* 1985 WL 1900, *3 (N.D.Ill.1985); the third decision, unlike this case, involved "no common circumstances evidencing reliance," *see Commander Properties Corp. v. Beech Aircraft Corp.,* 164 F.R.D. 529, 540 (D.Kan.1995).

## III. Typicality

We next address Rule 23(a)(3)'s requirement that the class representative's claims be typical of those of the class. "A plaintiffs claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). Because commonality and typicality are closely related, a finding of one often results in a finding of the other. *Arenson,* 164 F.R.D. at 664. In assessing commonality, we determined that Peterson and the class members' claims are based on the same course of conduct—Block's alleged scheme to defraud them into purchasing the RAL service despite their ineligibility—and the same legal theories. The same findings consequently satisfy typicality.

We reject Block's argument that Peterson's claims are atypical because she testified in her deposition that she did not read the RAL Fact Sheet's warning about a possible reduction in her RAL, and that this bestows Block with an affirmative defense of nonreliance against Peterson—a defense not available to other class members who did read the RAL Fact Sheet. As discussed above, individual reliance is not an issue in this case; as such, it cannot make Peterson an atypical class representative.

## IV. Adequacy of Representation

Rule 23(a)'s final component mandates that the class have adequate representation. Fed.R.Civ.P. 23(a)(4). This requirement is comprised of three elements: (1) the chosen class representative cannot have claims that are antagonistic to or that conflict with those of the class members, *Rosario,* 963 F.2d at 1018; (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy," *Riordan,* 113 F.R.D. at 64, and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. *Id.* Block raises three points in contending that Peterson fails the adequate representation element: (1) she is atypical, (2) she cannot

advance costs for notice to class members, and (3) her counsel do not make the grade.

### A. Peterson's Adequacy As a Class Representative

Because we hold that Peterson satisfies the typicality requirement, there is no need to address Block's first point. As to the second point, class counsel have stipulated that they will advance the costs of class notice against recovery, relieving Peterson from having to do so herself Pl. Reply at 14. Rule 1.8(d)(2) of the Rules of Professional Conduct for the Northern District of Illinois permits an attorney representing an indigent client to pay litigation expenses on the client's behalf The Seventh Circuit has likewise recognized the propriety of attorneys underwriting litigation costs. *See Rand v. Monsanto Co.,* 926 F.2d 596, 599 (7th Cir. 1991) (allowing class counsel to advance costs for the class suit with recovery of expenses dependent on the outcome of the case). *Rand* also stated unequivocally that plaintiffs may be held personally responsible for nothing more than their pro rata share of litigation expenses. *See id.* at 601 (requiring class representative to bear all costs personally, as opposed to her pro rata share, would be "inconsistent with Fed.R.Civ.P. 23 because it would cripple the class action device that rule creates"). The court reasoned that class actions are but a consolidation of small claims, none large enough to justify imposing on the class representative burdens greatly in excess of his share: "The very feature that makes class treatment appropriate—small individual stakes and large aggregate ones—ensures that the representative will be unwilling to vouch for the entire costs. Only a lunatic would do so. A madman is not a good representative of the class." *Id.* at 599.

The cases Block cites do not undermine this authority. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), did not impose on class representatives the obligation to bear litigation costs personally or address any questions about apportioning costs between representative and counsel. *Id.* at 177–79, 94 S.Ct. at 2152–53; *see Rand,* 926 F.2d at 599–600 (interpreting *Eisen*). Rather, the Court simply ruled

that a judge cannot order the defendant to pay costs for class notice. *Id.* Moreover, *Palmer v. BRG of Georgia, Inc.*, 874 F.2d 1417, 1420–21 (11th Cir.1989), is antithetical to the Seventh Circuit's authoritative decision in *Rand.* Indeed, most courts concur with *Rand. See, e.g., In re Oracle Sec. Litig.*, 136 F.R.D. 639, 643 (N.D.Cal.1991) ("To require recoupment of litigation expenses from the class representative is at odds with Rule 23 . . . ."); *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C.1991) ("the named plaintiff's willingness, or lack thereof, to advance the full costs of the litigation or of class notice is irrelevant").

Following *Rand,* we accept class counsel's stipulation that they will advance the costs of class notice against recovery. Accordingly, Peterson's inability to finance the cost of notice herself does not render her inadequate.

### B. Adequacy of Class Counsel

In a footnote, Block cites cases in which class counsel have variously been held adequate and inadequate class counsel. This tells us nothing definitive about counsel's abilities and we have been given no reason to question them in this case. Indeed, class counsel have prosecuted numerous consumer class actions, including actions before this Court, without incident We therefore find class counsel adequate.

With the adequacy of both the class representative and her attorneys intact, we conclude that Rule 23(a)(4) is satisfied.

### V. Rule 23(b)(3)'s Remaining Requirement—Superiority

▮▮▮ Finally, in addition to the already-discussed predominance factor, Rule 23(b)(3) requires that a class action be superior to other methods for fair and efficient adjudication of the controversy. This subsection provides a non-exhaustive list of four factors for courts to consider in this assessment: the interest of each member in conducting the litigation individually; whether other actions growing out of the same controversy and involving the same parties have been filed; the desirability of concentrating the litigation in one forum; and the manage-

ability of a class action. Block challenges only the class action's manageability, based on the premise that the parties will have to conduct onerous discovery on myriad individual issues relating to oral representations and reliance. We have already ruled that such individual inquiries are unnecessary in this case, where the alleged fraud involves standard conduct and documents. Furthermore, the remaining three considerations weigh in favor of a class action. First, the class members lack financial incentives to litigate this suit individually. Since all members earn incomes low enough to qualify for an EITC, their refund amounts are correspondingly small, the modest possible recovery for each individual plaintiff would be dwarfed by individual litigation costs. This is clearly an instance where "the amounts at stake for individuals may be so small that separate suits would be impracticable." *Amchem Prods., Inc. v. Windsor,* —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) Second, consolidating all of these claims in one forum is desirable because all are based on the same alleged fraudulent scheme that was directed toward a large number of Illinois residents. Finally there is no evidence that any other actions involving this controversy and parties have been filed elsewhere. Because both the predominance and superiority prongs are met, the class may be certified under Rule 23(b)(3).

### CONCLUSION

For the above reasons, Peterson's motion for class certification is granted. The class will consist of all Illinois residents who were presented with the RAL Fact Sheet, paid for Block's RAL service, and claimed an EITC in the 1994 tax year or later.

Class counsel are directed to prepare and file a proposed notice, pursuant to Fed. R.Civ.P. 23(c)(2), with the Court on or before August 1, 1997. A status hearing will be held in open court on August 6, 1997 at 9:00 a.m. to address an appropriate litigation schedule for this lawsuit.