**GIBBS PROPERTIES CORPORATION, Food Service of Tallahassee, Inc., and Casa Calderon, Inc., Plaintiffs,**

**v.**

**CIGNA CORPORATION, Cigna Fire Underwriters Insurance Co., Bankers Standard Insurance Co., Insurance Company of North America, and Pacific Employers Insurance Co., Defendants and Third–Party Plaintiffs,**

**v.**

**Corporate Risk Management Services, Inc., Third–Party Defendant.**

No. 3:98–CV–687–J–21C.

United States District Court, M.D. Florida, Jacksonville Division.

June 16, 2000.

William G. Cooper, George E. Ridge, Tracy K. Arthur, Richard J. Lantinberg, Cooper, Ridge & Beal, Jacksonville, FL, Sanford P. Dumain, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York City, Melvyn I. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Milberg, Weiss, Bershad, New York City, for plaintiffs.

Cathleen G. Bell, Robert W. Pass, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, John H. Beisner, Brian D. Boyle, Ian T. Simmons, Teresa Kwong, O'Melveny & Myers LLP, Washington, DC, Alan Douglas Henderson, Law Office of Alan D. Henderson, Jacksonville, FL, for defendants.

## *ORDER*

NIMMONS, District Judge.

This cause comes before the Court on Plaintiffs' Motion for Class Certification (Dkt. 84), Plaintiffs' memorandum in support (Dkt. 85), Plaintiffs' Amendment to Motion for Class Certification (Dkt. 97), Defendant's Response (Dkt. 111) in opposition to class certification, and Plaintiffs' Reply memorandum (Dkt. 126).

Plaintiffs Gibbs Properties Corporation ("Gibbs"), Casa Calderon, Inc. ("Casa Calderon"), and Food Service of Tallahassee, Inc. ("Food Service") filed their original complaint on July 17, 1998 (Dkt. 1). On July 27, 1999, the Court dismissed (Dkt. 70) three of the Plaintiffs' counts. Subsequently, Plaintiffs filed their First Amended Complaint (Dkt. 72). On May 12, 2000, a hearing was held in open court on the class certification motion. (Transcript, Dkt. 134).

Plaintiffs are three Florida corporations which purchased various commercial insurance packages from Defendants Cigna Fire Underwriters Insurance Co. ("Cigna Fire"), Bankers Standard Insurance Company ("Bankers"), Insurance Company of North America ("INA"), and Pacific Employers Insurance Company ("Pacific"), insurance companies which are all owned by Defendant Cigna Corporation.[1] The crux of Plaintiffs' Complaint is that Defendants purported to

sell insurance to Plaintiffs in accordance with rates and schedules filed with the Florida Department of Insurance ("FDOI") but in fact instituted various policies and procedures whereby Defendants would illegally and improperly inflate the premiums and collect such excessive premiums. As alleged by Plaintiffs, such policies and procedures, which are in violation of the Florida Insurance Code and the FDOI regulations, included both offsetting mandatory experience-based credits, which policyholders had a legal right to receive, with arbitrary and unjustified schedule debits, resulting in an illegal increase in the premium charged by at least 8% per year, and simply increasing premiums annually without regard to whether such was permissible under Florida law, i.e., without regard to whether the policyholders' individual risk characteristics justified the increase. By knowingly collecting as a premium or charge for insurance any sum different from the premium or charge applicable to that type of insurance as filed with the FDOI, Plaintiffs allege that Defendants violated Florida law, the Florida Insurance Code and regulations promulgated thereunder, and the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq.

In Plaintiffs' motion for class certification (Dkt. 84), as amended (Dkt. 97), Plaintiffs seek to certify a class consisting of all persons who (i) reside or do business in the State of Florida, (ii) purchased or renewed either a commercial general liability policy (monoline or package) or commercial automobile policy from any of the Defendants from January 1, 1990 through December 31, 1992, and (iii) were charged a premium inconsistent with the applicable rates, as modified by the misapplication of Defendants' schedule rating plan, under Florida law. Excluded from the class would be the Defendants; members of the immediately family of each Defendant; any person, firm, trust, corporation, officer, director, or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants; and the legal

---

1. For the sake of simplicity, the Court will refer to all Defendants collectively as "Cigna" or "Defendants."

representatives,· heirs, successor-in-interest or assigns of any such excluded party.

## LEGAL STANDARD AND REQUIREMENTS OF RULE 23

Rule 23(a) allows an action to be maintained as a class action only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. If the Court determines that the requirements of Rule 23(a) have been met by the moving party, the Court then proceeds to determine if the requirements of Rule 23(b) have been met. *Hudson,* 90 F.3d at 456, n. 8. The party seeking class certification must show that his action falls into one of the three possible categories of actions under Rule 23(b). In the present case, the Plaintiffs assert their claims under rule 23(b)(3).[2]

■ When determining whether the requirements of Rule 23 are satisfied, the Court cannot consider the merits of the Plaintiffs' claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 175–76, 94 S.Ct. 2140, 2153–54, 40 L.Ed.2d 732 (1974). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." 417 U.S. at 178, 94 S.Ct. at 2153 (quoting *Miller v. Mackey Int'l,* 452 F.2d 424, 427 (5th Cir. 1971)). Nevertheless, it is sometimes necessary to "probe behind the pleadings before coming to rest on the certification question." *Hudson,* 90 F.3d at 457 (quoting *General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147,

160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740, 752 (1982)).

■ The Court may look beyond the allegations of the complaint to determine whether the requirements of Rule 23 have been met. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 722–23 (11th Cir.1987). Evidence relevant to the certification question is often intertwined with the merits. *Nelson v. United States Steel Corp.,* 709 F.2d 675, 679 (11th Cir.1983). For this reason, the *Eisen* principle "should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements." *Love v. Turlington,* 733 F.2d 1562, 1564 (11th Cir.1984). Simply put, "[a]t the class certification stage, the Court examines evidence as to how the class proponents intend to prevail at trial, not whether the facts adduced by the class proponents are susceptible to challenges by class opponents." *In re Polypropylene Carpet Antitrust Litigation,* 178 F.R.D. 603, 618 (N.D.Ga.1997).

■ In their memorandum in support of class certification, the Plaintiffs assert, "A court's determination of class action certification should be based on the allegations set forth in the complaint, *Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656, 661 n. 15 (2nd Cir.1978), and those allegations must be accepted as true. *In re Carbon Dioxide Antitrust Litig.,* 149 F.R.D. 229, 232 (M.D.Fla.1993) ('For the purposes of class certification, . . . the Court accepts the Plaintiffs' substantive allegations as true.')." (Pl. mem. at 12, n.15)(Dkt. 85). *See also Jackson v. Motel 6 Multipurposes, Inc.,* 175 F.R.D. 337, 340 (M.D.Fla.1997). This Court does not believe, however, that the cases

---

**2.** Said subsection provides:

(b) **Class Action Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\*　　\*　　\*　　\*　　\*　　\*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair

and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

cited by Plaintiffs state a proposition contrary to the standard expounded in the preceding paragraphs. The *Shelter Realty, In re Carbon Dioxide*, and *Jackson* cases—although stating that all factual allegations must be accepted as true—considered affidavit, deposition, and/or courtroom testimony as to the facts of the respective cases. Thus, it is clear from the context of the opinions, viewed in their entireties, that those courts considered factual evidence which pertained to class certification. It is equally clear that each court refrained from considering the merits of the actions before them and, only in that sense, accepted the *substantive* allegations of the complaint as true. Yet, based on the evidence considered by those three courts, the cases make it clear that the Court is not bound to accept as true allegations in the complaint that the Rule 23 class certification requirements have been met. Accordingly, the Court is not bound by Plaintiffs' allegations that Rule 23 has been satisfied.

## REQUIREMENTS UNDER RULE 23(a)

### A. *Numerosity*

■ Plaintiffs allege that over 40,000 insureds were victims of the "each and every" pricing scheme used by Defendants. Defendants do not dispute this number and, in fact, rely on this number in their argument that individual issues requiring "tens of thousands" of mini-trials make class certification inappropriate. Regardless of whether the other requirements have been met, the Court finds that the proposed class meets the numerosity requirement of Rule 23(a).

### B. *Commonality*

■ A named plaintiff must also present claims with questions of law or fact common to the class. Nevertheless, it is not required that all of the questions of law or fact raised by the case be common to all the plaintiffs. *Walco*, 168 F.R.D. at 325. In cases where a common scheme of deceptive conduct or conspiracy is alleged, many courts have held that common questions of law and/or fact will exist. *Id. See also In re Polypropylene Carpet Antitrust Litigation*, 178 F.R.D. 603, 613 (N.D.Ga.1997) (commenting that "[t]ypically, questions concerning the existence and scope of an alleged conspiracy will satisfy the commonality requirement.").

■ Defendants argue that individual questions "permeate" the litigation and there is no commonality of issues. Defendants explain their argument by asserting that underwriting a policy and setting a rate is a subjective judgment. Thus, each potential class member's claim would have to be analyzed to determine whether the price actually charged was "reasonable". However, Plaintiffs' suit does not allege that each individual underwriter failed to peg the "correct" rate. Plaintiffs' suit alleges that the Defendants enforced a policy (the "each and every" practice) which robbed the underwriters of their ability to use their judgment when underwriting a policy and mandated rate increases, thus violating Florida law. If each class member pursued his claim individually, he would have to prove that the Defendants did in fact have such a policy. Assuming that the Plaintiffs could prove such a policy, then whether the policy rate actually set was "reasonable" would be moot because the rate was set according to the illegal policy and not according to Florida law. *See e.g. Dujanovic v. MortgageAmerica, Inc.*, 185 F.R.D. 660 (N.D.Ala.1999)(certifying class against mortgage lender where plaintiff asserted payment was an illegal referral fee, which precluded necessity for individualized findings regarding reasonableness of the payment).

### C. *Typicality*

■ The typicality requirement is met if the claims of the named plaintiffs "stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory." *Walco*, 168 F.R.D. at 326; *In re Polypropylene Carpet*, 178 F.R.D. at 613. The named Plaintiffs' claims must be based on similar factual situations to those of the other class members in order to be able to prove the bulk of the elements of each class members' claims when they prove their own claims. *Id.* at 326. They do not need, however, to be identical. *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985).

■ Since all commercial and commercial automobile policies were allegedly affected by the "each and every" practice each class member, if proceeding independently, would have to prove the existence of the "each and every" practice. Therefore, the named Plaintiffs' claims are typical of the class. *See Kennedy v. Tallant,* 710 F.2d 711, 717 (11th Cir.1983) (finding that the named plaintiff in a securities fraud class action proved that the defendant committed the same unlawful acts, in the same method, against the entire class and, thus, the named Plaintiff's claim was typical of the other class members' claims).

### D. *Adequacy*

■ The purpose of the adequacy requirement is to protect the legal rights of the unnamed class members. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 726 (11th Cir.1987). "Because all members of the class are bound by the res judicata effect of the judgment, a principal factor in determining the appropriateness of class certification is 'the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class.'" *Id.*

Defendants argue that the named Plaintiffs do not have a sufficient understanding of the case in order to adequately represent the class. In support of this argument, Defendants have referred the Court to various deposition excerpts of the named Plaintiffs. Upon review of the cited excerpts, the Court is of the opinion that the named Plaintiffs have a clear understanding of the allegations of the complaint and how Cigna's alleged misconduct affected their businesses and the business of all the class members.

■ The deposition transcripts show that the Plaintiffs may not know the exact definitions of words and phrases used in the insurance industry, such as "schedule debit", or may not know the experience modification used to calculate their premiums in each year of the class period. Nevertheless, the deposition transcripts also show that the Plaintiffs have a generalized understanding of the allegations in this case and have relied upon the professional advice of legal counsel and persons trained in the calculation of insurance premiums to form the basis of their understanding. Rule 23 does not require that the named Plaintiffs understand all of the legal and insurance intricacies of the suit in order to adequately represent the class. Plaintiffs understand the basis for the suit and stated in their depositions that they were outraged at Cigna's purported misconduct and, thus, wished to pursue their claims against Cigna. Consequently, the Court finds that the named Plaintiffs will adequately represent the class.

Defendants next argue that Plaintiffs' counsel will not adequately represent the class. The named Plaintiffs' counsel have an extensive history of prosecuting class action suits, some before this very Court. Despite Defendants' disagreement as to strategy, there is no real question as to the adequacy of counsel. Moreover, neither the named Plaintiffs nor counsel have a conflict of interest with the other class members which would render them incapable of adequately representing the class.

■ Defendants also argue that Plaintiffs' counsel has a conflict of interest caused by the retention of plaintiffs' class certification expert, Mr. Lindquist. Defendants assert that they retained Mr. Lindquist in 1989 to advise them on a potential rate filing. They also assert that the information they provided to Mr. Lindquist was to be kept confidential. Since Plaintiffs have hired Mr. Lindquist to allegedly breach his duty of confidentiality, Defendants assert, allowing Plaintiffs' counsel to proceed in this suit creates an appearance of impropriety.

In their reply memorandum, Plaintiffs argue that Mr. Lindquist did not even remember that he had done any work for Defendants—over ten (10) years ago—when he began working for Plaintiffs. Plaintiffs additionally argue that Mr. Lindquist was never an employee of the Defendants and never even had a written contract with Defendants. Additionally, Plaintiffs' counsel represented during the hearing on class certification that Mr. Lindquist would only provide expert witness testimony at trial.

The deposition testimony of Mr. Lindquist cited by Defendants in support of their argu-

ment only shows that Mr. Lindquist considered information pertaining to rate filings to be confidential, vis-a-vis potential competitors, prior to any Florida Department of Insurance decision. Defendants do not offer any other proof to the Court that information provided to Mr. Lindquist was confidential. For example, there is no letter, statement, or contract provided to the Court memorializing a confidentiality agreement between Defendants and Mr. Lindquist. Although the Court is not holding that a written agreement would be necessary, the absence of such documentary and testimonial evidence regarding confidential information persuades the Court that there is insufficient evidence of a conflict of interest regarding Mr. Lindquist's participation in this case.

Defendants has also not described the type of information that was provided to Mr. Lindquist and in what way Mr. Lindquist is purported to have breeched any confidentiality. The only case cited by Defendants for the proposition of disqualifying Plaintiffs' counsel from representing the Plaintiffs in this matter dealt with a law firm which paid a former management employee to disclose confidential information from his former corporate employer. *See Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F.Supp. 651 (M.D.Fla.1992), *aff'd*, 43 F.3d 1439 (11th Cir.1995). In *Rentclub*, the former employee had been the chief financial officer of a subsidiary company of the defendant. In that role, he was privy to confidential and proprietary information and business documents. He was also substantially involved in litigation relating to the *Rentclub* litigation, including having been deposed as an employee of the defendant in a related case. 811 F.Supp. at 658. The *Rentclub* court concluded that the interest of the corporation in protecting privileged information acquired by an employee during the course of employment from disclosure to an opponent in litigation remains after the employee leaves the corporation. *Id.* The holding was later affirmed by the Eleventh Circuit. 43 F.3d at 1440.

In the instant case, Mr. Lindquist was never an employee of any of the Defendants. Additionally, while it may have been Mr. Lindquist's practice to not disclose information to insurance competitors while preparing a proposed rate filing, there is no evidence before the Court that he was under any legal duty to do so. Mr. Lindquist was also never privy to the same type of information to which the former employee in the *Rentclub* case was privy. Mr. Lindquist never spoke for the corporation at any time and certainly not in litigation.

The Court is cognizant that the burden of proof of the Rule 23 requirements lies with the party proposing class certification—the Plaintiffs in this case. *But see Dujanovic*, 185 F.R.D. at 668 (holding that "[t]he defendant bears the burden of demonstrating the inadequacy of the counsel or the representative"). Nevertheless, allegations of impropriety or conflicts of interest which would disqualify Plaintiffs' counsel are, to say the least, serious. In this case, Plaintiffs have propounded evidence showing the experience Plaintiffs' counsel has in pursuing class action litigation. Based on counsel's extensive experience, it is clear that they are qualified to represent the plaintiff class. On the other hand, Defendants have offered only one sentence from a deposition to support an allegation of conflict of interest intended to entirely disqualify Plaintiffs' counsel from representing the Plaintiffs in this suit. As stated above, there is just not sufficient evidence to disqualify Plaintiffs' counsel based on a purported conflict of interest with Plaintiffs' class certification expert.

**REQUIREMENTS OF RULE 23(b)(3)**

**A. Predominance**

**1. Rico**

■ Defendants' primary objection to class certification is that individual questions of law or fact predominate over any common issues. Plaintiffs claim that Cigna's actions constituted a pattern of racketeering activity in violation of the federal RICO statute, 18 U.S.C. § 1962(c). In order to prevail on a RICO claim, a plaintiff must prove that the defendant is conducting an enterprise through a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). In this case, the acts of racketeering,

or predicate acts, are alleged to include acts of mail or wire fraud.

The elements of mail and wire fraud are identical. *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir.1991). Those elements are: (1) a person intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme. *Id.* The scheme must be "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* at 1499. A private plaintiff who alleges mail or wire fraud as a predicate act under civil RICO must also prove that he has suffered injury by reason of the defendant's acts of deception. *Id.* That is, "the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme." *Id.* at 1499–1500.

In the instant case, the named Plaintiffs have propounded extensive evidence relating to the existence of the "each and every" scheme. The Court finds that the named Plaintiffs have sufficiently demonstrated that whether a scheme existed to defraud insurance customers based on the "each and every" practice and whether Defendants used the mails or wires in furtherance of that scheme are susceptible to proof on a class-wide basis.

While Defendants claim that individualized inquiries would be necessary to determine the "proper" rate for each class member and whether the rate actually charged was reasonable, the Court finds this argument is a red herring. As previously explained above, if Plaintiff can show that an illegal "each and every" practice was used to set rates, apart from the seasoned judgment an underwriter was to apply, then it is not necessary to determine a hypothetical "reasonable" rate for each customer.

Defendants additionally argue that, since the Plaintiffs must show reliance as an element of their RICO claim, each individual class member must independently show reliance. That, Defendants claim, would necessitate 40,000 individual "mini-trials" on reliance.

In opposition, Plaintiffs claim that reliance can be presumed since the Defendants illegally inflated the price of the insurance premiums and the price of insurance is always a material component of an insurance contract. Plaintiffs also argue that reliance on a legal price can also be presumed, much like it is in "fraud on the market" securities cases pursuant to § 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b–5. The insurance industry is heavily regulated in Florida and its pricing is carefully governed by the DOI. Consequently, the Plaintiffs argue, just as the market acts " 'as the unpaid agent of the investor, informing him that given all the information available to it, the value of the stock is worth the market price,' so does the DOI 'inform' insurance buyers, through its regulatory involvement, that the premiums they are paying are the premiums they *should* be paying." (Pl. reply mem., Dkt. 126). Plaintiffs assert that insurance buyers, like investors, have good reason to believe the price they are paying is the legal, proper price—free of manipulation in violation of the regulatory scheme. Plaintiffs claim they are entitled to a presumption that they relied upon the price quoted and upon the integrity of that price. Plaintiffs also argue that this is especially true in an instance such as the present one where the Defendants have conceded, in written submissions and oral argument, the importance of price to the Plaintiffs and the proposed class.

Similar to a cause of action under RICO, reliance is an essential element of a cause of action pursuant to Rule 10b–5. *Lipton v. Documation, Inc.*, 734 F.2d 740, 742 (11th Cir.1984). Nevertheless, pursuant to the "fraud on the market" theory, a plaintiff pursuing a securities fraud claim may allege that he relied on the integrity of the market prices in purchasing the securities and then shift the burden to the defendant to disprove actual reliance. *Id.* at 745–46. The theory is considered most appropriate "in the context of class actions in order to eliminate the necessity of each class member proving subjective reliance and where the securities were traded on a developed and open market, so that market prices reflect available

information about the corporation." *Id.* at 743.

The reliance standard is "reasonable reliance." *See United States v. Brown*, 79 F.3d 1550, 1557 (11th Cir.1996). The Court agrees with the Plaintiffs that a reasonably prudent person could rely on the fact that the policy rates charged by an insurance company were calculated and quoted to the person in conformance with applicable Florida insurance statutes. Indeed, it would be the extraordinary person who would—or even could—determine how a quoted rate is calculated in order to verify that the insurance company has conformed to legal requirements. Furthermore, since premium rates are integral parts of any insurance contract and an illegal provision of a contract is legally void, it would be reasonable for a party to an insurance contract to assume that the rate quoted was legally calculated.

The Court concludes, however, that current Eleventh Circuit precedent does not permit the Court to allow a presumption of reliance in civil RICO actions. The Eleventh Circuit has directed that RICO plaintiffs cannot rely on an inflated price caused by a fraud on the market in order to prove reliance. *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir.1991). In *Pelletier*, the appellate court explained that a private plaintiff suing under civil RICO must show that his injury was proximately caused by the commission of the predicate acts. *Id.* at 1499. The *Pelletier* court then explained:

> There is some question whether this proximate cause requirement limits damages recoverable to those caused directly by the predicate act (e.g., by reliance on fraudulent misrepresentations) or to those caused indirectly by the predicate act (e.g., by purchasing property at a price that has been artificially inflated by a scheme to defraud). We have taken the more restrictive view, holding that a plaintiff has standing to sue under section 1964(c) only if his injury flowed directly from the commission of the predicate acts. This means that, when the alleged predicate act is mail or wire fraud, the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme.

921 F.2d at 1499–1500 (internal citations omitted). Thus, Plaintiffs in the present case must show that they relied on misrepresentations by the Defendants as to the legality of the quoted insurance rate.

Under the facts of the instant case, the Plaintiffs must prove that they were targets of the scheme to defraud and that they relied to their detriment on misrepresentations made by Defendants in furtherance of that scheme. The Court accepts that whether the Plaintiffs were targets of the "each and every" scheme is susceptible to proof on a class-wide basis. However, to allow a claim to proceed on the basis of a fraud on the market theory (i.e. that class members relied on the legality of quoted rates) would be to allow a theory that each class member purchased insurance at a price that had been artificially inflated by a scheme to defraud. As the above quotation from *Pelletier* demonstrates, this is precisely the example used by the Eleventh Circuit to illustrate the type of RICO case that would *not* be permitted. *Pelletier*, 921 F.2d at 1499; *see also Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1025 (11th Cir.1996) (holding that plaintiffs would "have to show, on an individual basis, that they relied on the misrepresentations" of defendants). *But see Singer v. AT & T Corp.*, 185 F.R.D. 681 (S.D.Fla.1998) (finding that reliance on company's alleged misrepresentations as to price could be presumed for purposes of class certification of RICO action).

The Court concludes, therefore, that under their count alleging violation of the civil RICO statute, the Plaintiffs have demonstrated that their allegations (1) that Defendants intentionally devised and participated in a scheme to defraud the Plaintiffs of money, and (2) that Defendants used the mails or wires in furtherance of that scheme, are susceptible to class-wide proof. Nevertheless, the Court is not convinced that a presumption may be made that each class member relied on misrepresentations or omission by the Defendants in furtherance of the scheme to defraud.

The next question which requires treatment then is whether these individual issues of reliance predominate over the common issues. Common issues need not be dispositive of the entire litigation.

In spite of this abundance of common questions, defendants argue that each member of the class would have to prove reliance, compliance with the statute of limitations, and damages and thus the common questions cannot be said to predominate over those affecting individual members. To acknowledge defendants' position [at] this point would be, in effect, an emasculation of the vitality and pliability of the amended rule. The common issues need not be dispositive of the entire litigation. The fact that questions peculiar to each individual member of the class may remain after the common questions have been resolved does not dictate the conclusion that a class action is not permissible.

*Shroder*, 729 F.2d at 1379 (quoting with approval *Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y.1968)); *see also Kirkpatrick*, 827 F.2d at 724–25 (holding that question of individual reliance could not render the securities fraud claims unsuitable for class treatment); *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985) (holding that the presence of individual questions of reliance does not mandate a finding that common questions of law or fact do not predominate and stating, "Rather than eliminate securities class actions, it would be more efficient to order separate trials, if necessary, limited to the issue of reliance."); *Peterson v. H & R Block Tax Serv., Inc.*, 174 F.R.D. 78, 84 (N.D.Ill. 1997) ("[I]t is well-established that individual issues of reliance do not thwart class actions").

The Court notes that class certification has generally been rejected in fraud cases where the alleged misrepresentations were oral, due to the predominance of individual reliance issues. *See Kaser v. Swann*, 141 F.R.D. 337, 339 (M.D.Fla.1991) (explaining that "[c]ourts have generally denied certification of oral communications because of the highly individualized nature of the statements between class members and defendants"); *Peoples v. American Fidelity Life*

*Ins. Co.*, 176 F.R.D. 637, 643–45 (N.D.Fla. 1998) (denying class certification where fraudulent scheme consisted of information contained within allegedly "identical" oral presentations because of individual fact-intensive analyses to determine what each class member was actually told). Certification is proper, however, if the plaintiffs can prove that the oral misrepresentations were uniform and no material variations existed in the statements made to each class member. *Grainger v. State Sec. Life Ins. Co.*, 547 F.2d 303, 307 (5th Cir.1977). Likewise, certification can be appropriate where the misrepresentations have been in writing. *See e.g. Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1378–79 (11th Cir.1984) (holding that there were predominant issues of law and fact where plaintiffs showed that each of the 492 class members received similar Truth–in–Lending disclosures).

In the present case, Plaintiffs allege oral and written misrepresentations by Defendants in furtherance of the "each and every" scheme. The Court agrees with Defendants and the case law cited above that individual issues of reliance predominate where oral misrepresentations are alleged. The Court would have to inquire into what was specifically misrepresented and whether the class member relied on the statement. Where there are 40,000 potential class members, that type of inquiry would be unwieldy in the extreme.

In the case of written misrepresentations, the statements will be substantially similar, if not identical, since they would be contained in the written insurance contract or billing statements. Here too, though, the Plaintiffs would have to prove individual reliance on the written materials. Once again, 40,000 separate inquiries into reliance makes this case unmanageable as a class action.

The Court agrees that the individual issue of reliance—by itself—would not preclude class certification. As exemplified by case law, the Court has the discretion to certify the class as to some issues and order separate trials as to reliance. *See* Rule 23(c)(4). Nevertheless, the Court concludes that, in conjunction with the issues discussed below, the common issues in the RICO cause of

action do not predominate over the individual questions of law or fact.

Issues of damages would also have to be individually determined for each class member. Under civil RICO, a plaintiff must prove damages as an element of the cause of action. Defendants claim that individual "mini-trials" would be necessary for each class member in order to determine damages. Plaintiffs counter by arguing that their class certification expert anticipates being able to use a formula in order to calculate damages for the class. Nevertheless, the materials submitted by the named Plaintiffs show that the amount of damages, if any, vary from class member to class member. The premium quoted for each class members varies. Moreover, the percentage increase in schedule debits varies from class member to class member. Defendants also assert that some insureds who received schedule debits have sufficient documentation in their underwriting folders to justify the schedule debits. Therefore, even if the Plaintiffs could prove that the "each and every" scheme existed, not all people who received schedule debits incurred damages. The Court would have to analyze each individual class member's underwriting file in order to calculate damages. The Court finds that such a task makes management of a class action suit unworkable as it pertains to damages.

## 2. Breach of Contract and Breach of the Doctrine of Good Faith and Fair Dealing

■ Under Florida law, the covenant of good faith and fair dealing is not an independent contract term. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir.1999). It is a doctrine which modifies all explicit terms of the contract. *Id.* at 1316–17. For this reason, a cause of action for breach of the doctrine of good faith and fair dealing will not stand without breach of an explicit contract provision. *Id.* at 1318; *Hospital Corp. of America v. Florida Medical Center, Inc.*, 710 So.2d 573, 575 (Fla. 4th DCA 1998). Accordingly, the Court will analyze together

the counts for breach of contract and breach of the doctrine of good faith and fair dealing.

■ A plaintiff asserting a cause of action for breach of contract must allege the existence of the contract, the breach, and damages. *Mobil Oil Corp. v. Dade County Esoil Management Co.*, 982 F.Supp. 873 (S.D.Fla.1997). The Court finds that the existence of a contract and whether it and the doctrine of good faith and fair dealing were breached through Defendants' employment of the each and every practice is susceptible to class-wide proof. Each policy for each class member would be written with Cigna's standard contracts and would, therefore, be substantially similar if not identical. Proving damages, though, would be just as problematic for the breach of contract claims as for the RICO claim. The Court would have to analyze each individual underwriting file in order to determine each class members' damages. With 40,000 potential class members, that is a task too onerous for one court.

## B. *Superiority*

Rule 23(b)(3) lists four factors for the Court to consider when determining the predominance of issues and superiority of proceeding as a class action. Those factors are: (1) the individual interests of the members of the purported class in controlling the prosecution or defense of separate actions; (2) the extent and nature of any already-existing litigation; (3) the desirability of concentrating the litigation in the particular forum; and (4) the manageability of a class action.

As explained above, the Court finds that individualized determinations would have to be made as to both reliance vis-a-vis the RICO count and damages as to all counts. A class action certified to pursue these elements would be unmanageable. Since Rule 23(c)(4) allows a class action to be brought with respect to particular issues, the Court will now determine if certifying the remaining issues, i.e. whether the "each and every" practice existed and whether Cigna breached its contracts through the employment of said practice,[3] would be a superior method of

---

**3.** Class members would then be free to pursue independent trials on the issues of reliance and

damages.

adjudication to other available methods for the fair and efficient adjudication of the controversy.

The individual interests of the members of the purported class in controlling the prosecution or defense of separate actions would not be damaged by a certification of the "each and every" issue because they would still have within their control the decision of whether to proceed to an individual trial on reliance and/or damages. A class member could decide to pursue either the RICO claims, the contract claims, or both. If the named Plaintiffs were able to prove the existence of the "each and every" scheme, all class members would benefit by the costs of that litigation being apportioned across the class. Conversely, if a class member chose not to pursue the individual issues, he could still theoretically be saddled with the apportioned costs—an obvious detriment.

There is no other already-existing litigation of these claims. Therefore, the factor which weighs the extent and nature of any already-existing litigation is not applicable to this case. Additionally, the Court is not convinced of the desirability of concentrating the litigation in this particular forum. Since individual trials as to reliance and damages will have to be pursued before any of the class members could prevail, the desirability of concentrating the litigation in this Court is not strong. Finally, the manageability of a class action may not be helped by just severing the issues of reliance and damages. It is entirely possible—indeed probable—that other issues will come up during the course of this litigation which will demand individualized treatment and thus tax the limited resources of the Court.

## CLASS DEFINITION

The final factor which convinces the Court of the unmanageability of the present suit as a class action is the class definition. Plaintiffs seek to certify a class consisting of all persons (i) who reside or do business in the State of Florida, (ii) who purchased or renewed either a commercial general liability policy (monoline or package) or commercial automobile policy from any of the Defendants from January 1, 1990 through December 31, 1992, and (iii) who were charged a premium

inconsistent with the applicable rates, as modified by the misapplication of Defendants' schedule rating plan, under Florida law. Plaintiffs argue that a list of all insureds who received a schedule debit during the class period could be computer-generated by the Defendants.

Nevertheless, the definition—as currently stated—would require the Court to sift through the tens of thousands of underwriting files of those insureds who received schedule debits in order to determine which files do not contain sufficient justification for the schedule debits. Admittedly, the Court is not well enough versed in insurance underwriting to quickly determine at a glance whether a schedule debit is justified by the documents in the file. Moreover, whether a schedule debit is justified by documents in the underwriting file would seem to be a question of fact for a jury to decide.

Plaintiffs have proposed that the Court could appoint three or four experts or special masters who would review the approximate 40,000 underwriting files in order to determine the class members (and also damages). However, in doing so, the Court would be taking factual questions away from the jury and entrusting the same to a few experts or special masters. Presumably, the Defendants—and perhaps even the Plaintiffs—would want to cross-examine these people on, for example, methodology. Once again, then, this suit would turn into an individual examination of 40,000 underwriting files.

It is generally acknowledged that a class must be identifiable. *Singer*, 185 F.R.D. at 685. Consequently, the class must be clearly defined and must be ascertainable without a prolonged and individualized analytical struggle. *In re Agricultural Chemicals Antitrust Litig.*, 1995 WL 787538 (N.D.Fla.1995). The class definition identifies the persons who are entitled to relief, bound by final judgment, and entitled to notice under Rule 23(b)(3). As such, it implicates substantial due process rights for both class members and the Defendants. The only requirement is that the description of the class be sufficiently definite to enable the court to determine if a particular individual is

a member of the proposed class. *Pottinger v. City of Miami*, 720 F.Supp. 955, 957 (S.D.Fla.1989).

■ Under the facts of this case and the class definition proposed by the Plaintiffs, the Court determines that there is *no way to* determine whether an individual is a member of the class without a prolonged and individual struggle. Even Plaintiffs estimate that it would take three to four experts a year to comb through 25,000 to 30,000 files. (Transcript of hearing, Dkt. 134, at 12). Plaintiffs' class description just does not fulfill the one essential requirement—definiteness. With this ultimate finding, the Court concludes that the motion to certify a class must be denied.

Upon consideration of the foregoing, it is hereby **ORDERED** that Plaintiffs' Motion for Class Certification (Dkt. 84) is **DENIED**.